John Staruck et al., Appellants, *v.* County of Otsego, Respondent.

Third Department, March 9, 1955.

*Joseph P. Leary* and *Francis H. Anderson* for appellants.

*Sterling P. Harrington,* County Attorney (*Livingston S. Latham* of counsel), for respondent.

FOSTER, P. J. Appeal by plaintiffs from an order and judgment dismissing the complaint herein. The trial court reserved decision on motions made at the close of the plaintiffs' proof and submitted the case to a jury, which found a verdict for plaintiffs in the sum of $8,250.

On March 23, 1951, the plaintiff Emma Staruck was shot and seriously wounded with a .22 calibre rifle in the hands of a delinquent boy who was then about fourteen years of age. He had been temporarily placed in a boarding home, pending his admittance to the Berkshire Industrial School. While there he stole a .22 rifle from the home, attempted to hold up an automobile, shot a dog, and then went to plaintiffs' home where, without any provocation, he shot Mrs. Staruck in the abdomen.

The theory of the complaint was that the defendant county, acting through its agents, was negligent in the supervision of the delinquent because his vicious propensities and dangerous character were known to the authorities. There is no doubt that the delinquent had been a problem child for some time. He had been before the Children's Court of Otsego County and had been placed under the supervision of the welfare department of the county, with a direction that he be taken to the Child Guidance Clinic conducted by the State Department of Mental Hygiene. After receiving reports from a State psychiatrist the Children's Court permitted the proceeding before it to be discontinued and left the delinquent under the jurisdiction of the county welfare department. He was continued in various boarding homes, three in a period of five months, and apparently made himself obnoxious in each one of them. Finally it was decided to attempt to get him admitted to the Berkshire Industrial School, and pending this action he was placed temporarily in the home from which he took the .22 rifle.

The law appears to be settled that where the State has the custody of a mental defective it stands in the relation of *loco parentis* so far as third persons are concerned, and owes to the community no greater duty than would parents under similar circumstances. (*Excelsior Ins. Co.* v. *State of New York,* 296 N. Y. 40.) We assume that the same rule applies to a county which has charge of a delinquent child. A parent is not liable for the torts of a child unless he is negligent in failing to reasonably restrain the child from vicious conduct where he has knowledge of the child's propensity toward such conduct (*Steinberg* v. *Cauchois,* 249 App. Div. 518). In the absence of some compelling reason that indicates the necessity of isolating such a child neither the parent nor the county is under the necessity of keeping him under constant surveillance (*Calabria* v. *State of New York,* 289 N. Y. 613). Thus, this unfortunate and tragic incident, and others like it, are a part of the risks a community must bear. The alternative would be to clap every delinquent suspected of criminal tendencies into an institution, or keep him under constant watch, and this would be an intolerable burden on society.

In a well-reasoned opinion the Trial Judge in this case dismissed the complaint herein upon the ground the evidence was insufficient to sustain liability against the county. While the delinquent had been guilty of conduct sufficient to stamp him as a delinquent child nevertheless the proof was hardly such as to indicate to a reasonable mind that he would shoot someone. The gun which he stole had been hidden and there was no reasonable ground to believe that he would find it and steal it. The home in which he had been temporarily placed was not licensed at the moment, but it had been so before, and from the record there is no question but what the people into whose custody he was temporarily placed were fit and competent for that purpose. On the whole case we think the decision by the Trial Judge was correct.

The judgment should be affirmed, without costs.

BERGAN, COON, IMRIE and ZELLER, JJ., concur.

Judgment and order affirmed, without costs.