**NATIONAL DAIRY PRODUCTS CORPORA-TION, a Corporation, and Albert L. Kern, Plaintiffs-Appellants,**

v.

**Robert A. FRESCHI, Mrs. Robert A. Freschi and Richard A. Freschi, a Minor, Defendants-Respondents.**

No. 31459.

St. Louis Court of Appeals.

Missouri.

July 21, 1965.

Richard M. Stout, Philip M. Sestric, Kent E. Karohl, St. Louis, for plaintiffs-appellants.

George E. Lee, Doris J. Banta, St. Louis, for defendants-respondents.

RUDDY, Presiding Judge.

This case was reassigned recently to the writer of this opinion. Plaintiffs appeal from the orders of the Circuit Court sustaining the Motion for Summary Judgment filed by one defendant and Motions for Directed Verdict at the close of plaintiffs' opening statement filed by the other two defendants. One set of events on the 10th day of December, 1957 gives rise to the separate and distinct claims for damages asserted by plaintiffs and stated in separate counts with Count I relating to the claim of the National Dairy Products Corporation and Count II being on behalf of plaintiff Albert L. Kern. The petition alleges that the plaintiff National Dairy Products Corporation was engaged in the distribution of dairy products in the County of St. Louis and for such purpose was the owner of a 1952 Divco truck; that the plaintiff Kern was an employee of the Dairy Company, making deliveries of milk in the 300 block of McDonald Avenue in Webster Groves, Missouri; that defendant Richard Freschi was three years of age at the time and the son of the other two defendants.

It is alleged that the driver of the truck, plaintiff Kern, "lawfully parked" at the curb in the 300 block of McDonald Avenue while he made deliveries of milk in said block in the scope of his duties as such employee; that while the driver was away from the truck the defendant Richard Freschi "negligently and carelessly entered upon the same, released the brake thereof and attempted to drive and operate the same down said MacDonald Avenue," and as a direct result the truck was caused to collide with a building and considerable damage resulted to the truck and to the dairy products contained in the truck, for which the dairy company asks damages in the total amount of $500.00.

The dairy company alleges that the damage was the direct and proximate result of acts of negligence of the defendants, in that:

"a. Defendants Mr. and Mrs. Robert Freschi and each of them negligently and carelessly failed to use ordinary care to restrain and control their said son, Richard Freschi, when they knew or in the exercise of ordinary care could have known that said child had a propensity for entering on and attempting to drive trucks.

"b. Said defendants negligently and carelessly failed and refused to use ordinary care to restrain their said child to prevent him from entering upon and releasing the brake of plaintiff's truck.

"c. Defendant Richard Freschi negligently and carelessly released the brake of plaintiff's truck and attempted to drive same without having secured a driver's license from the State of Missouri.

"d. Said defendant Richard Freschi negligently and carelessly entered upon plaintiff's truck, released the brake thereof and attempted to drive same when he was unable to do so.

"e. Said defendant Richard Freschi negligently and carelessly drove, steered and operated plaintiff's truck into, against and upon the aforesaid building."

Plaintiff National Dairy Products Corporation states that its said damages were and are the direct and proximate result of the negligence alleged.

On behalf of Plaintiff Kern, in addition to the allegations heretofore recited, it is alleged that he saw the defendant Richard Freschi attempting to drive said truck down the street; that the life and limb of said child were endangered by driving the said truck; that he, plaintiff Kern, attempted to stop said truck and to rescue the child and in so doing, he was dragged by said truck for a distance of approximately 200 yards and sustained numerous physical injuries to his body and was caused to expend $25.00 for medical care and attention. He alleges further that all of said injuries resulted directly and proximately from the negligence of defendants as set forth in the petition.

To this petition defendant Richard Freschi filed his Motion for Summary Judgment under the provisions of Civil Rule 74.04, V.A.M.R. on the ground that the petition revealed that he was a minor of the age of three years and under the laws of the State of Missouri there could be no recovery against a person of the age stated where such recovery is sought upon the ground of negligence and carelessness of said person.

This Motion for Summary Judgment was sustained by the trial court and although plaintiffs have undertaken to appeal from this order, they have not perfected their appeal as to this order. They have failed to raise any question about this ruling in their points relied on. By failing to do so, they have abandoned any claim of error as to such ruling. State v. Brookshire, Mo., 325 S.W.2d 497, 500.

The defendant parents filed Answer to the petition in which they admitted the family relationships and denied each and every other averment. The Answer also alleged contributory negligence on the part of the plaintiffs and assumption of risks of injury and damage by plaintiffs.

On November 26, 1962, the cause came up for trial on the petition and answer as set out and after the jury had been selected and sworn to try the case, the plaintiffs' attorney proceeded to make an opening statement. Portions of this opening statement pertinent to the questions here presented are as follows:

"Count One of the petition is brought by the St. Louis Dairy or National Dairy Products Corporation for damages to a truck and for the destruction of about $200.-00 worth of milk.

"Count Two is brought by Mr. Kern for some personal injury sustained out of the same accident that I am about to describe to you.

"The defendants in the case are Robert A. Freschi, who is here in court with his wife. They live together with their small son, Richard, on McDonald Place in Webster Groves.

"Back in 1957, on December 10 of that year, the evidence will show that the Freschis lived in their home, I think it is 330 McDonald Place, that Mr. Kern was employed by the National Dairy Products Corporation as a milk wagon driver; that early on that day he was on his route, which included the 330 block of McDonald and parked his truck at the curb; that he turned off the ignition switch and put on the brakes, and he left the truck with the doors open, as milkmen do, to deliver some milk.

"The evidence will show that when he got out of the truck he didn't see young Richard Freschi anywhere around, but when he started to make a delivery of milk his attention was attracted by the motion of a truck and he turned around and noticed the truck rolling down the hill, which is a very steep hill.

"The evidence will show that he threw a container down and caught hold of the truck, and he was successful in climbing up to the door and getting his hand inside to hold the boy before the crash came. The

crash was in front of Mr. Ballwin's house where the truck knocked a porch off Mr. Ballwin's house.

"The evidence will show that Richard was approximately three years of age—give or take a month or two.

"The evidence will show that he was in his pajamas at the time.

"The evidence will further show that prior to this time, at least on two or three occasions, Mr. Kern had seen young Mr. Freschi two or three blocks away from his home in pajamas in the early morning.

"On another occasion, although Mr. Kern didn't know about the other matter until after the accident occurred, young Freschi climbed down the sewer and moved down a couple manholes before they fished him out. And the evidence will show he was found in a neighbor's house across the street, having climbed in through a window. The evidence will show he probably escaped from the Freschi home through a window from his nursery.

"We are unable to find any evidence that young Freschi had ever been known to climb into and start an automobile or truck before.

\* \* \* \* \* \*

"It is our contention that under these circumstances Mr. and Mrs. Freschi are liable to the damages that St. Louis Dairy Company sustained to its truck and the milk products and the injury Mr. Kern sustained in his attempt to rescue Richard Freschi from serious injury; that Mr. Kern was actually successful in his effort to hold him back so that he would not be bounced against the windshield. He was not able to get inside the truck, he was hopping alongside of it, but he was not able to get in before it hit the house. It is a very steep hill that drops down toward the Ballwin's home, which is the house that was hit.

"It is our contention that Mr. and Mrs. Freschi knew or in the exercise of ordinary care should have known their young son

needed supervision in the early hours of the morning when he had a way of getting out of the house to get to places where he didn't belong. They are liable for the reasonable losses sustained by the St. Louis Dairy Company and Mr. Kern in connection with Mr. Kern's efforts to rescue young Richard, and we would ask you to return a verdict in our favor if we show you these facts.

"Mr. Lee suggests, and correctly, this was about 7:00 in the morning."

Following this opening statement, defendants made an oral motion for a directed verdict in their favor and also filed a written motion for directed verdict. The court sustained this motion, directed one of the jurors to sign a form of verdict in favor of defendant parents and thereupon a judgment was rendered against the plaintiffs on both Count I and Count II.

Neither party argues or briefs any point with reference to contributory negligence, and the case is presented to this court upon the question of whether or not the petition and opening statement revealed that a case could or would be made by plaintiffs against the parents of a three year old son in the circumstances outlined in the petition and in the opening statement.

■■ If the plaintiffs' petition states a cause of action against the defendants, the trial court may not take the case away from the jury at the close of the opening statement by directing a verdict, except where it clearly and definitely appears from the opening statement that the plaintiff cannot recover. Such action by the court is an extreme measure and should be exercised cautiously and only in a clear case. Hays v. Missouri Pacific Railroad Co., Mo., 304 S. W.2d 800; Bush v. Anderson, Mo.App., 360 S.W.2d 251; 88 C.J.S. Trial § 161c, pp. 318–321.

■ The opening statement is usually only an outline of anticipated proof rather than a detailed statement, and counsel is

properly permitted considerable latitude with regard to what he does not say as well as what he does say. Counsel is not expected to recite every detail of evidence to be offered and the mere insufficiency of the opening statement to recite facts which show that plaintiffs' anticipated evidence would, as a matter of law, present a submissible case, is not of itself standing alone, sufficient justification to stop the case at that stage and direct a verdict for defendants. Hays v. Missouri Pacific Railroad Co., supra; Bush v. Anderson, supra; 88 C.J.S. Trial §§ 161a–161c.

In the case of Butcher v. Main, Mo., 371 S.W.2d 203, l. c. 206–207 the Supreme Court said: "Our general view is that courts should be very reluctant to direct a verdict at the close of plaintiff's opening statement. It certainly should not be done because of the mere failure to state facts sufficient to constitute a submissible case unless counsel affirmatively admits that no additional facts will be shown by the evidence. A different situation is presented when the statement of counsel affirmatively discloses, as a matter of law, that plaintiff is not entitled to recover. * * *" We think the opening statement of counsel affirmatively discloses as a matter of law that plaintiff is not entitled to recover.

The only act of negligence charged against the defendants, parents of Richard Freschi, was that they " * * * negligently and carelessly failed to use ordinary care to restrain and control their said son, Richard Freschi, when they knew or in the exercise of ordinary care could have known that said child had a propensity for entering on and attempting to drive trucks.

"Said defendants negligently and carelessly failed and refused to use ordinary care to restrain their said child to prevent him from entering upon and releasing the brake of plaintiff's truck." Concisely stated, the parents of Richard Freschi are charged with having knowledge that Richard had a propensity for entering and attempting to drive trucks and that they failed

and refused to restrain him in that propensity. Plaintiffs in their brief state that the issue presented is apparently one of first impression before the Missouri courts. The precise question involved here does not seem to have been before the courts of this state. However, in the case of Charlton v. Jackson, 183 Mo.App. 613, 167 S.W. 670, this court held that parents who permitted a reckless 13 year old boy to play with a shotgun would be liable to plaintiff who was shot by him. There was evidence that the boy had, prior to the day when he shot plaintiff, pointed the gun at her in the presence of his father. In that case we announced the rule as follows: " * * * No one can doubt that, if the father knows his indiscreet minor son of tender years is using a firearm in such careless and negligent manner as to endanger the safety of others about him, it is his duty to interpose the parental authority to prevent injury to such persons as may, within the range of reasonable probability, be exposed to injury therefrom. * * * "

■ Other cases charging a parent with neglect and failing to restrain a vicious son have been before the Supreme Court. In Paul v. Hummel, 43 Mo. 119, the court said: " * * * A parent cannot be held liable for the willful trespasses and torts of his infant children, when he neither assents to nor ratifies them. * * * There is no such relation existing between father and son, though the son be living with his father as a member of his family, as will make the acts of the son more binding upon the father than the acts of any other person. * * * " In that case the court absolved the parent of liability. The same rule had been announced and followed in the case of Baker v. Haldeman, 24 Mo. 219, wherein the petition alleged an assault with a knife and a cutting and maiming of plaintiff's minor son by defendant's minor son. The rule of liability against the parents recognized in those cases is that a parent may be liable where the parent knowingly permits his child to mishandle firearms or other dangerous weapons. As pointed out by the defendants herein, the use of a firearm or other dangerous weapon is not involved in the instant case.

■ In the Missouri cases just cited the law is reasonably well established that the parent is not liable, merely by reason of his or her relationship, for the torts of the child. Also see Murphy v. Loeffler, 327 Mo. 1244, 39 S.W.2d 550. The plaintiffs recognize this rule but assert that the question is not one of parental liability for the tort of the child, but one of direct negligence on the part of the parents. The rule in this regard is stated in 67 C.J.S. Parent and Child § 68, p. 798, as follows: "As a general rule, a parent may be liable for an injury which is directly caused by the child, where the parent's negligence has made it possible for the child to cause the injury complained of and probable that the child would do so, * * *." However, as we have stated, the liability of the parent for the tort of the child is not because of his or her relationship to the child but the liability of the parent is based on the rules of negligence rather than on this relationship and in this connection the negligence of the parent must have been the proximate cause of the injury, Hulsey v. Hightower, 44 Ga.App. 455, 161 S.E. 664. As said in 67 C.J.S. Parent and Child § 68, p. 799, " * * * In other words, the injury must have been the natural and probable consequence of the negligent act, that is, a consequence which, under the surrounding circumstances, might and ought reasonably to have been foreseen as likely to flow from such act. In order to render a parent liable, his or her negligence in the exercise of parental supervision must have some specific relation to the act of which complaint is made, and liability may not be predicated on a failure to supervise where supervision would not have rendered the parent aware of the possibility of the tortious conduct of the child." The cases cited by both plaintiffs and defendants are either founded upon the use of a dangerous instrumentality by the child with the knowledge of the parent or where assaults were made by the child by striking,

beating and abusing other children and the parents knew of their child's propensities for committing said assaults. In a reading of virtually all of the cases cited the basis of liability is that the child had a habit of doing the particular type of wrongful act which resulted in the injury complained of. Martin v. Barrett, 120 Cal.App.2d 625, 261 P.2d 551; Condel v. Savo, 350 Pa. 350, 39 A.2d 51, 155 A.L.R. 81; Johnson v. Glidden, 11 S.D. 237, 76 N.W. 933. In other words, the parent was charged with the duty to foresee the commission of the tort alleged because of his or her knowledge of the child's habits, traits or propensities toward the commission of the particular tort and a failure upon a part of the parent to restrain or control the child from the commission of the particular type of wrongful act which resulted in the injury complained of creates liability. The negligence of the parents in the exercise of parental supervision must have some specific relation to the act which is alleged to have caused the injury and liability against the parent may not be predicated on a failure to supervise, restrain or control the child where the failure to so supervise, restrain or control the child had no relationship to the specific act which caused the injury to the plaintiffs. Bateman v. Crim, D.C.Mun.App., 34 A.2d 257. A case frequently cited which shows situations wherein a parent may incur liability and which constitute exceptions to the general rule that the parent is not liable for the tort of his minor child because of the mere fact of his paternity is Steinberg v. Cauchois, 249 App.Div. 518, 293 N.Y.S. 147. In that case the plaintiff while walking on a public sidewalk was struck by a bicycle operated by the child defendant. The parents were charged with negligence in permitting their minor child to operate a bicycle on the sidewalk in violation of a city ordinance and the complaint alleged that the defendants permitted their child to operate the bicycle in a reckless manner on the sidewalk after they had notice of his conduct in so operating it on previous occasions. The jury brought in a verdict for the plaintiff against both the child and his parents.

On appeal, the judgment was reversed as to the parents. The court said: "In our opinion the evidence is insufficient to charge the adult defendants with liability to the plaintiffs for damages resulting from the tort of their infant son. The parent is not liable, merely by reason of his or her relationship, for the torts of the child. * * * 'Unless made so by statute, there is no liability on the part of a parent, as such, for the tort of a child. The child * * * is, in general, liable for his own tort.' Harper's Law of Torts, § 283. There are situations in which the parent may be held liable: (1) Where the relationship of master and servant exists and the child is acting within the scope of his authority accorded by the parent; (2) where a parent is negligent in intrusting to the child an instrument which, because of its nature, use, and purpose, is so dangerous as to constitute, in the hands of the child, an unreasonable risk to others; (3) where a parent is negligent in intrusting to the child an instrumentality which, though not necessarily a dangerous thing of itself, is likely to be put to a dangerous use because of the known propensities of the child; (4) where the parent's negligence consists entirely of his failure reasonably to restrain the child from vicious conduct imperilling others, when the parent has knowledge of the child's propensity towards such conduct; and (5) where the parent participates in the child's tortious act by consenting to it or by ratifying it later and accepting the fruits. Harper's Law of Torts, supra. None of these exceptional situations is inferable from the evidence in this case."

The situations referred to in (1), (2), (3) and (5) have no application to the facts in the instant case. It is only the situation mentioned in (4) that has any application to the facts and circumstances of this case, and it is this category of liability on which plaintiffs rely. In their points relied on plaintiffs assert that the court erred in ruling that they did not have a cause of action against the parents of the minor defendant where the petition alleged

and the evidence offered would show that the defendant-parents knew or in the exercise of ordinary care should have known of the propensity of their said minor to perform acts of the same kind as those which caused the injury, but failed to exercise reasonable care to control their minor and prevent the act. The difficulty and fallacy of plaintiffs' position in this regard is that in their opening statement they did not offer evidence to show that the minor child had the propensity to perform acts of the same kind as those which caused the injury in the instant case. To the contrary, the opening statement shows that plaintiffs were " * * * unable to find any evidence that young Freschi had ever been known to climb into and start an automobile or truck before." This statement does not demonstrate a mere insufficiency to recite facts which show that plaintiffs' anticipated evidence would as a matter of law present a submissible case but it is a clear and unmistakable admission on the part of plaintiffs that they have no evidence that young Freschi had ever been known to climb into and start an automobile or truck before. This opening statement is an admission that plaintiffs are unable to prove that the minor boy, Richard Freschi, had a propensity for entering and attempting to drive trucks as alleged in plaintiffs' petition. Of course, before the parents can be charged with negligently and carelessly failing to restrain and control their said child to prevent the child from entering upon and attempting to drive a truck and having a propensity therefor, it is incumbent upon the plaintiffs to prove that the said minor child had such a propensity. If plaintiffs are unable to prove that said minor child had climbed into and started automobiles or trucks before, they certainly cannot prove that the parents of said minor child failed and refused to restrain the said minor child in that propensity. Plaintiffs' inability to produce evidence in support of their allegation in the petition that the child had such a propensity is fatal to plaintiffs' cause of action. As we have said before our reading of the cases shows that the basis of liability on the part

of the parents is that the child had a habit of doing this particular type of wrongful act which resulted in the injury complained of and that the parents had knowledge thereof and failed to restrain and control the child in the performance of such propensity.

In the case of Ryley v. Lafferty, D.C., 45 F.2d 641, the complaint alleged in substance, that defendant's child had a vicious and malignant disposition and habit of inveigling smaller boys into secluded places and there beating, bruising, maiming, and punishing them; that the defendant parents at the time in question well knew of such vicious habit and disposition; that, notwithstanding such knowledge, they permitted continuance of their son's act; that the father encouraged his son in such conduct by resenting any resistance or admonition by others when such acts were committed, and failed to protect other children from such acts. The District Court in overruling a demurrer to the complaint said, "While it is true that parents are not liable for torts committed by their minor children without their consent and knowledge, yet the principle applicable to the facts alleged in this case is that the parents are liable if it appears *that they knew that their child was guilty of committing the particular kind of tort habitually* and encouraged the child, as alleged, and made no effort to correct or restrain him. * * *" (Emphasis ours.)

In the case of Norton v. Payne, 154 Wash. 241, 281 P. 991, the action was brought for an infant aged five years, by her guardian ad litem, for injuries sustained by being struck in the eyeball with a stick in the hand of the child of respondent, age seven years, possessed of the habit of striking smaller children in the face with sticks. It was alleged that the parents of the child causing the injury knew about and encouraged her in her habit of striking other children with sticks. The judgment of the trial court dismissing the action was reversed and remanded. The court in the course of its opinion said, " * * * the evidence is

that the parents knew that their child was guilty of committing *this particular kind of tort habitually;* that the father encouraged her therein; which implies that he made no effort to restrain the child, and therefore must be deemed to have consented to its commission at any time by the child."

In the case of Steinberg v. Cauchois, supra, heretofore referred to, as we said, the judgment against the parents was reversed on appeal on the particular ground that sufficient notice had not been brought home to the parents that their son was accustomed to riding his bicycle on the sidewalk.

In the case of Bateman v. Crim, supra, plaintiff was injured when two boys were playing on the sidewalk with their football. In denying liability against the parents of said boys the court held that there was no evidence that either boy had previously played with a football on public streets or conducted himself in a disorderly manner; and that in order to render a parent responsible for injuries resulting from his minor child's wrongful deed, the parent's negligence in the exercise of parental supervision must have some *specific relation to the act complained of,* and that such was lacking in the case.

The case of Martin v. Barrett, supra, was one in which the complaint alleged that the child, aged twelve, was a careless, unreasonably aggressive and reckless person. It involved injuries sustained by plaintiff's child, age five, in the use of a B-B gun or air rifle by defendant's child. In holding that the complaint failed to state a cause of action the court said, " * * * before a cause of action may be stated against the parents for the tort of a child it must allege a specific known course of misconduct by the minor involving *his habitual, intentional, and specific wrongful acts against* other parties and the parents' failure to take proper precaution to guard them *against said acts.* The plaintiffs in the instant case failed to allege sufficient participation by either parent on the part of the child to state a cause of action against them." (Emphasis ours.)

In the case of Capps v. Carpenter, 129 Kan. 462, 283 P. 655, it was alleged that the boy's father was negligent in giving him a B-B gun when he knew or should have known of the boy's bad disposition and habits. It was further alleged that the child was cruel, treacherous, selfish, arbitrary, domineering and prone to inflict punishment on other children. The court reversed the case and remanded it for a new trial because of error in the admission of testimony as to paltry "cruelties" on the child's part and error in instructions. Among other things the court said, " * * * Whether Joe was domineering or arbitrary or selfish or inclined to impose on other children, or had such a reputation, had nothing to do with the case. Likewise, whether he was cruel, and inclined to chastise and inflict punishment on other children, and had such a reputation, was not important, unless the propensities and reputation went far beyond 'being mean among other children.' "

The case of Staruck v. County of Otsego, 285 App.Div. 476, 138 N.Y.S.2d 385, was one in which the plaintiffs sought to charge the county for negligence in the supervision of a vicious and dangerous boy. The court held that although the boy's past conduct had stamped him as a delinquent, the proof was not such as to indicate to a reasonable mind that he would shoot someone. It said, " * * * In the absence of some compelling reason that indicates the necessity of isolating such a child neither the parent nor the county is under the necessity of keeping him under constant surveillance * * *."

A case closely akin to the instant case in principle is that of Gissen v. Goodwill, Fla., 80 So.2d 701. In that case a hotel employee sued the parents for injuries suffered when their child, eight years of age, slammed the door on his hand. The petition alleged that the child had dangerous tendencies and propensities of a mischievous and wanton disposition and that she had previously damaged objects of furniture and furnishings in the hotel and harassed and disturbed the guests thereof and that she committed other

wanton, willful and intentional acts of a similar nature to the act committed against the plaintiff such as striking guests and employees of the hotel. The court after reviewing many of the cases we have reviewed said, "One common factor from the foregoing cases appears salient in the assessment of liability to the parents, that the child had the habit of doing the particular type of wrongful act which resulted in the injury complained of. * * * It is nowhere claimed that the child here involved had a propensity to swing or slam doors at the hazard of persons using such doors. The deed of a child, the enactment of which results in harm to another and which is unrelated to any previous act or acts of the child, cannot be laid at the door of the parents simply because the child happened to be born theirs. However, a wrongful act by an infant which climaxes a course of conduct involving similar acts may lead to the parents' accountability. A deed brought on by a totally unexpected reaction to a situation which is isolated of origin and provocation could not have been foretold or averted and hence could not render the parents responsible." The court sustained the action of the trial court in entering judgment against plaintiff for failure to state a cause of action stating that " * * * it is not made to appear that the injury claimed to have been sustained by the appellant was a natural and probable consequence of negligence on the part of the appellee parents."

Plaintiffs rely on the case of Caldwell v. Zaher, 344 Mass. 590, 183 N.E.2d 706. This was an action against parents of a child on the theory that the parents knew of the tendency of the child to assault, accost, torment and molest young children but who took no steps to restrain the child in these propensities. This case offers no support to plaintiffs because the court in the case said: " * * * This duty of parental discipline arises when the parent knows or should know of the child's propensity *for the type of harmful conduct complained of,* and has an opportunity to take reasonable

corrective measures. * * *" The other authorities cited by plaintiffs contain the same holding.

Because this case seems to be one of first impression in this state, we have reviewed extensively the authorities of other jurisdictions. We think the rule that may be safely laid down is that where the parents had knowledge of the child's habits, traits or propensities toward the commission of a particular tort and they failed to exercise supervision and control over the child in connection with the commission of the particular type of wrongful act and subsequently a similar act resulted in injury to a complainant liability may be imposed upon the parents. It was not error for the trial court to sustain the motion for a directed verdict as to Count I at the close of the opening statement.

In its last point, plaintiff Albert Kern asserts that the court erred in ruling that he did not have a cause of action on Count II of the petition against the parents of Richard Freschi, a minor, for the value of injuries received in the attempt to rescue the minor from a dangerous situation in an emergency. In Count II of the petition the said plaintiff alleged that his injuries resulted directly and proximately from the negligence of the defendants (parents). He seems to indicate that his theory of recovery is based upon the "rescue doctrine." A general statement of the rescue doctrine is that one who has, through his negligence, endangered the safety of another, may be held liable for injuries sustained by a third person in attempting to save such other from injury. To maintain an action on Count II, plaintiff Kern must allege and prove that through the negligence of the defendants (parents) they have endangered the safety of the child and that plaintiff Kern's injuries were sustained in an attempt to save the child from injury. Inasmuch as we have held that plaintiffs in their opening statement admitted they had no evidence to show the negligence of the parents in the respects charged we must find

that the trial court's action in sustaining the motion for a directed verdict on Count II at the close of the opening statement by plaintiffs was correct. The judgment of the circuit court should be affirmed. It is so ordered.

WOLFE and ANDERSON, JJ., concur.