[Civ. No. 897.   Fifth Dist.   Mar. 20, 1968.]

DAWN WEISBART, a minor, etc., Plaintiff and Appellant, v. ROBERT FLOHR et al., Defendants and Respondents.

Anthony J. Scalora and Leonard P. Burke for Plaintiff and Appellant.

Rust & Hoffman, Rust, Hoffman & Mills, David C. Rust, Ellis J. Horvitz and B. V. Yturbide for Defendants and Respondents.

CONLEY, P. J.—This case involves a tort committed by a seven-year-old boy, Dean Flohr, against Dawn Weisbart, a five-year-old girl neighbor. The plaintiff sued the boy on two theories, alleging

1) that he was negligent, and

2) that he was guilty of a battery.

The plaintiff also sued the parents, Lorraine Flohr and Robert Flohr, on the theory that they were negligently responsible for the wrong done by their son in that they did not properly restrain his use of the bow and arrow which caused the damage.

While the appeal was taken from the entire judgment, nothing was said in the briefs or in the oral argument on appeal with respect to the jury's verdict in favor of the mother and father. Lorraine and Robert Flohr. Neither is the jury's implied finding that there was an absence of technical negligence on the part of Dean Flohr seriously attacked on appeal. The contention of appellant rather is that the trial court committed reversible error by failing to grant plaintiff's motion for a directed verdict against Dean Flohr on the theory that he was responsible for the tort committed by him even if he was not technically negligent.

The evidence shows that Dean Flohr had a bow and arrow in his hands when he told Dawn Weisbart, his neighbor, in effect, "If you don't get off the lawn in front of my house, I will shoot you with this bow and arrow," and that after the threat he aimed the weapon in her general direction, pulled back the bow string, and shot his homemade arrow, with the result that her left eye was put out.

In attempting to extricate himself from blame, the infant defendant testified that he did not intend to strike the plaintiff in the face, and only to frighten her and to shoot at her feet near her, but that the arrow was deflected by his thumb so that it struck the plaintiff and destroyed her eye. However, as is said in 1 Restatement of the Law, Torts, Assault and Battery, section 20, page 46: "If an act is done with the intention of inflicting upon another a harmful bodily contact or of putting the other in apprehension of either a harmful or offensive bodily contact and if it causes an offensive bodily

contact to the other, the actor is liable to the other although the act was not done with the intention of bringing about the resulting offensive contact.''

In addition to asserting that the trial judge should have granted her motion for a directed verdict, plaintiff also claims that counsel for defendants was guilty of prejudicial misconduct by displaying and operating, over objection, a whole series of toys in his closing argument to the jury, none of which had been received in evidence and all of which were employed to prove the irrelevant contention that many toys misused by children are capable of causing severe injuries.

As we have already seen, there were two grounds alleged in the complaint for recovery by the plaintiff against Dean Flohr, negligence and the infliction of a battery considered entirely apart from negligence. In the first cause of action in paragraph III, it is alleged that the defendant, Dean Flohr, ''. . . negligently and carelessly used a bow and arrow and negligently and carelessly shot an arrow so as to cause the said arrow to strike the minor plaintiff Dawn Weisbart in the left eye.''

The second cause of action alleges, among other things, that the parents of the defendant boy ''. . . negligently and carelessly failed to take said bow and arrows from the said minor and negligently and carelessly permitted him to continue in possession of said bow and arrows and use said bow and arrows in and about the neighborhood.''

The plaintiff by permitted amendment added a third cause of action to his first amended complaint in which it was alleged as follows:

I

''Plaintiff repleads and realleges the allegations contained in paragraphs I and II of the first cause of action and by reference incorporates the same herein as though the same were fully set forth.

II

''That, on the 9th day of October, 1964, in the County of Sacramento, State of California, the defendant, Dean Flohr, a minor, wilfully pointed a bow and arrow at the plaintiff and in her direction from a distance of approximately 10 feet.

III

''That, at said time and place, the defendant Dean Flohr, a minor, wilfully shot the aforementioned arrow in the direc-

tion of the plaintiff; that said arrow, so shot and projected by the defendant, struck plaintiff in the left eye.

## IV

"That, as a direct and proximate result of the aforesaid wilful acts of the defendant, plaintiff suffered the total and complete loss of her left eye all to her damage in the sum of $250,000.00.

## V

"That, as a direct and proximate result of the wilful acts of defendant as aforesaid, plaintiff required and will in the future require, the services of physicians, nurses, hospitals, drugs, prosthesis, and other medical attention all to her further damage in the sum of which is unknown at this time and plaintiff prays leave of court to amend this complaint to insert the correct amount of said expenses at such time as they are ascertained.

## VI

"That, as a direct and proximate result of the wilful acts of defendant as aforesaid, plaintiff has been greatly impaired in her ability to earn wages in the future and has been greatly limited in her ability to compete for jobs in the future all to her further damage in the sum of $250,000.00.''

Thus, the suit was founded and tried on two theories as against the defendant Dean Flohr, one entirely based on the alleged negligence of the boy and the other not founded upon negligence but upon the theory that a wilful battery was committed against the little girl, resulting in the loss of her eye and consequent damage to her throughout her life.

The question whether Dean Flohr was guilty of negligence depended on whether, in the opinion of the jury, the small boy acted as a reasonably prudent and careful person of his age in the circumstances proven in the record, and we believe that that matter of fact was one which the jury had a right to act upon. (*Singer* v. *Marx*, 144 Cal.App.2d 637 [301 P.2d 440]; *Christian* v. *Goodwin*, 188 Cal.App.2d 650 [10 Cal.Rptr. 507].) The question remains, however, whether or not a boy of that age who wilfully threatens another child with harm through the shooting of an arrow at or toward her, and who thereafter makes good the threat and, consequently, inflicts an assault and battery on the other child, is responsible for the damage caused by him irrespective of whether or not he is guilty of technical negligence.

Section 41 of our Civil Code reads as follows: "A minor, or

person of unsound mind, of whatever degree, is civilly liable for a wrong done by him, but is not liable in exemplary damages unless at the time of the act he was capable of knowing that it was wrongful.''

In Prosser's Law of Torts (3d ed. 1964), section 128, at pages 1024-1025, it is said: ''The law of torts . . . has been more concerned with the compensation of the injured party than with the moral guilt of the wrongdoer, and has refused to hold that an infant is immune from tort liability. As Lord Kenyon said in a leading English case, 'If an infant commit an assault, or utter slander, God forbid that he should not be answerable for it in a court of justice.' [See *Jennings* v. *Randall*, 1799, 8 Term.Rep. 335, 337, 101 Eng.Rep. 1419.] Accordingly, infants are held liable for assault and battery, trespass to land, conversion, defamation, seduction, deceit, and negligence. The fact that a tort is committed by an infant under the direction of his parent may render the parent also liable, but it will not excuse the infant.''

██ This statement of the general principle is that a minor, even though not guilty of negligence because of his actions in view of his age, is still answerable for the damage done by an assault.

In *Ellis* v. *D'Angelo*, 116 Cal.App.2d 310 [253 P.2d 675], it was held that a 4-year-old defendant could be sued properly for the damage caused by a battery ''. . . [when he] pushed, impelled and knocked [the plaintiff] . . . violently to the floor.'' In discussing the theory applicable to such a state of facts, Mr. Justice Dooling used the following language at pages 313-314:

''This section [section 41, Civil Code] is based upon sections 23 and 24 of the Field Commission's draft of a Civil Code which was submitted to the New York Legislature in 1865. This may be an anachronistic vestige of earlier common law principles, in other fields now outmoded, of liability without fault for trespass *vi et armis* (see Bohlen, *Liability In Tort Of Infants And Insane Persons,* 23 Mich.L.Rev. 9) but it remains true that our Legislature in Civil Code, section 41, above quoted by providing that a minor or person of unsound mind is civilly liable for wrongs done by him, and particularly by the qualification that he shall not be held for exemplary damages unless he was capable of knowing that the act was wrongful, has indicated clearly that it intended that a minor or person of unsound mind should be liable in compensatory damages for his tortious conduct even though he was

not capable of knowing the wrongful character of his act at the time that he committed it. Startling as this idea may be at first blush, we are bound by this legislative declaration and taking it, and the state of the common law with relation to the liability of infants and persons of unsound mind of which it was intended as a codification, it is our duty to determine the legislative intent and to enforce it.

"It is generally stated in 27 American Jurisprudence, Infants, section 90, pages 812-813: 'Liability of an infant in a civil action for his torts is imposed as a mode, not of punishment, but of compensation. If property has been destroyed or other loss occasioned by a wrongful act, it is just that the loss should fall upon the estate of the wrongdoer rather than on that of a guiltless person, and that without reference to the question of moral guilt. Consequently, for every tortious act of violence or other pure tort, the infant tort-feasor is liable in a civil action to the injured person in the same manner and to the same extent as an adult. . . . Infancy, being in law a shield and not a sword, cannot be pleaded to avoid liability for frauds, trespasses, or torts. . . .

" 'A child of tender years may be held liable for acts of violence, and liability has often been imposed for the injuries caused by such acts, although committed in play and without the intent to inflict substantial injury. Of course, if the injury was an accident, or the acts of the child were only the natural activity of friendly play, there is no liability.' "

Later in the opinion, it is stated at pages 316 and 317:

"No purpose will be served by reviewing all the authorities. None has been found in this state which we feel compels us to hold that a 4-year-old has the mental capacity for negligent conduct. It is stated in a note collecting the cases from other jurisdictions in 107 American Law Reports 102 et seq.: 'In a majority of the cases it seems that the courts have regarded a child between the ages of 4 and 5 years as incapable of personal negligence, the rule of conclusive incapacity applying to a child of such an age.' (See further cases collected in the supplement to this note in 174 A.L.R. 1119.) We are satisfied from our own common knowledge of the mental development of 4-year-old children that it is proper to hold that they have not at that age developed the mental capacity for foreseeing the possibilities of their inadvertent conduct which would rationally support a finding that they were negligent. The mental development of children from that age forward is so rapid that cases such as *Smith* v. *Harger,* 84 Cal.App.2d

361 [191 P.2d 25], dealing with a 5-year-old child are not helpful to us.

"When it comes to the count charging battery a very different question is presented. We certainly cannot say that a 4-year-old child is incapable of intending the violent or the harmful striking of another. Whether a 4-year-old child had such intent presents a fact question; and in view of section 41 of the Civil Code which makes the recognition of the wrongful character of the tort immaterial so far as the liability for compensatory damages is concerned, we must hold that the count charging battery states a cause of action.

"The third count is without question sufficient to state a cause of action against the defendant parents. It alleges that these defendants employed plaintiff for the first time to act as baby sitter for their son, that the son 'habitually engaged in violently attacking and throwing himself forcibly and violently against other people, and violently shoving and knocking them, all of which said defendant parents knew,' that said 'parents negligently and carelessly failed to warn plaintiff of said child's said traits and disposition and negligently and carelessly failed to inform plaintiff that said child habitually indulged in such violent and furious attacks on others,' and that shortly after plaintiff entered on her duties in the home the child attacked her to her resultant injury."

Another California case holding to the same effect is *Singer* v. *Marx, supra,* 144 Cal.App.2d 637, in which a 9-year-old boy was held responsible for striking a neighborhood girl with a rock thrown by him in the direction of two neighbor girls living on the same street. On page 641 of the opinion, Mr. Justice Ashburn states:

"The general proposition that an infant is liable for his torts is established in this state by statute. Civil Code, section 41, ... That statute, it will be noted, does not imply as an element of liability for compensatory damages the existence of capacity to appreciate the wrongful character of the act. But the cases have engrafted upon it certain reasonable qualifications about to be discussed.

"An infant who forcibly invades the person of another is liable for a battery regardless of an intent to inflict injury; the only intent which is necessary is that of doing the particular act in question—in this case throwing a rock at somebody."

In that case the judgment of nonsuit in favor of the boy, Tim Marx, and his mother was reversed.

290

(See also 1 Harper and James, The Law of Torts, Intended Torts, § 8.13, p. 658.)

Here, the defendant, Dean Flohr, testified that he knew how to handle the bow and a homemade arrow converted to that use from a plant growing in his father's yard. He admitted that it was wrong to point an arrow at another person, and, also, that he had been warned by his father never to shoot an arrow at anyone. Admittedly, he knew that a bow and arrow could be dangerous if not properly used, and that it was wrong to point an arrow at Dawn Weisbart, but he did it because he did not want her to walk on his lawn. He also testified that he fired the arrow intending to scare her.

Generally speaking, his parents testified that they thought Dean knew how to handle a bow and arrow properly; that the father had carefully instructed him with respect to the weapon; that most of the boys in the neighborhood, including two older sons of the defendant parents, had also used bows and arrows. The record showed that the minor defendant himself was usually an obedient boy, and that he was intelligent and obtained average, or better, marks in school. He had been friendly with the little neighborhood girl, and, for the most part, had played acceptably with other children in the area. Several adults and children from the neighborhood testified to the same conclusions.

There can be no question that the damage to the little girl was extensive and permanent. It is our opinion that the trial court should have granted the motion for judgment in favor of the plaintiff and against the minor defendant based upon the issue presented by the third cause of action in the amended complaint. Consequently, the judgment in favor of Dean Flohr must be reversed.

With respect to the implied finding in favor of Lorraine and Robert Flohr, however, we conclude that the jury's verdict was supported by ample evidence and was proper. It is said that in France, under the law as it now exists, parents are financially responsible for damage caused by their infant children under circumstances such as are presented in the instant case. It is also true that the Legislature in this state has invoked a similar rule as to parents concerning damage to school property effected by one of their children. (See Ed. Code, § 10606.)* But the rule as to general parental

.*Education Code section 10606, enacted in 1959, is based on section 10674 of the Education Code of 1943. This section in turn was founded on earlier sections of the Political Code and the School Code.

liability for torts of their children is different; before parents may be held responsible in damages caused by one of their children, it must be shown that the parents as reasonable persons previously became aware of habits or tendencies of the infant which made it likely that the child would misbehave so that they should have restrained him in apposite conduct and actions. The evidence must show that they had a duty as reasonable persons to restrain the child from the use of the implements in question.

In *Ellis* v. *D'Angelo, supra,* 116 Cal.App.2d 310, 317, it is said: "While it is the rule in California, as it is generally at the common law, that there is no vicarious liability on a parent for the torts of a child there is 'another rule of the law relating to the torts of minors, which is somewhat in the nature of an exception, and that is that a parent may become liable for an injury caused by the child where the parent's negligence made it possible for the child to cause the injury complained of, and probable that it would do so.' (*Buelke* v. *Levenstadt,* 190 Cal. 684, 689 [214 P. 42]; *Rocca* v. *Steinmetz,* 61 Cal.App. 102 [214 P. 257].)

"Section 316, Restatement of Torts states the rule:

" 'A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the parent

" '(a) knows or has reason to know that he has the ability to control his child, and

" '(b) knows or should know of the necessity and opportunity for exercising such control.'

"In a note in 155 American Law Reports at page 87 cases are collected under the following statement: 'The parent will incur liability for his minor child's intentional acts of violence or damage to persons or property if, knowing of the child's vicious or destructive tendencies or acts, he fails to exercise reasonable measures to restrain or discipline the child and thus encourages or acquiesces in such misconduct on the part of the child.' "

The necessity of reversing the judgment as to the minor defendant is emphasized by the prejudicial misconduct of counsel for the defendants in arguing the case and the failure of the trial judge to restrain such actions in accordance with the objection made by counsel for the plaintiff. Before the closing argument on behalf of defendants, the attorney for those parties indicated that he would use numer-

ous toys, including a bicycle, a skate board and imitation weapons, to support his argument. And at that time, the plaintiff made an objection to the court's permitting such use of physical objects which had not been received in evidence. The objection urged by counsel for the plaintiff is as follows: "MR. SCALORA: Well, the inquiry is this: Mr. Rust is now prepared to make his argument to this jury. He has brought paraphernalia into the courtroom that consists of many types of toys, weapons, matter and things that have never been brought into evidence. What is the purpose in permitting the jury to visualize and see them, at this time, I can't say. However, I notice he has got machine guns in there. He's got various types of weapons that are made into toys. I believe, probably, that these are capable of ejecting projectiles and discharging them through the air. He has baseball bats, many, many things, I would say there's numerous—there's as many as possibly one dozen out there, and obviously when they are viewed and looked upon by the jury and having never been brought into this courtroom as evidence or connected in any way have effect as being evidence. I can't see how it can do anything other than just to prejudice or alienate this jury in regard to the fact they must consider. Doesn't appear to be proper procedure."

Having made this comprehensive objection, it was not essential to repeat it, after the harm was done, particularly in view of the court's ruling: ". . . I think that Mr. Rust can make any sort of argument he wants. It can be completely irrelevant. It can be nonpersuasive or persuasive, as he chooses." The judge also said to defendants' counsel: "As far as I am concerned, you can do this for the purposes of illustration. I will permit it."

The physical objects were apparently used very effectively. According to the oral argument on appeal, bombardments were carried on in the courtroom with various toy weapons. The bicycle, the skate board, the boomerang and all of the other illustrative objects were stressed in demonstrations before the jury. Apparently, the closing argument was accompanied by something very much like a circus. Of course, it is obvious that the different physical objects which were brought in to accompany the closing argument had little or nothing to do with the issues before the court and jury. Whether or not children fall off of bicycles, or get hit by boomerangs, or have their eyes enucleated by being accidently hit by marbles had nothing to do with the issues before the jury, that is to say,

whether the bow and arrow in question were misused, whether any of the defendants was negligent, or whether there had been, as was obvious, an assault and battery against the plaintiff. The use of these other props was a diversionary exercise. None of them had been received in evidence and it was an improper employment of the courtroom to permit such a circus performance. (See *Deibler* v. *Wright,* 119 Cal.App. 277 [6 P.2d 344]; *Alberts* v. *Lytle,* 1 Cal.App.2d 682 [37 P.2d 705]; *King* v. *Kaplan,* 94 Cal.App.2d 697 [211 P.2d 578].)

■ One other claim for reversal is that the court committed prejudicial error in admitting into evidence a former written statement made to an investigator for the defendants by a 15-year-old neighbor of defendants named Terry Floyd. Shortly thereafter, it refused to admit a tape-recorded interview of Floyd taken before the trial by one of plaintiff's attorneys.

The admission in evidence of an early statement of the witness Terry Floyd was justified as an attempt to rebut the inferential charge that the witness had made a recent fabrication by saying that he had suggested jokingly that the infant defendant shoot the plaintiff; this showed an early statement in line with his then current testimony. (*People* v. *Hardenbrook,* 48 Cal.2d 345 [309 P.2d 424]; *Bickford* v. *Mauser,* 53 Cal.App.2d 680 [128 P.2d 79].) The admission of this evidence for the purpose indicated did not authorize the admission of another statement on tape taken by a representative of plaintiff at another time; the court evidently thought that as another writing obtained by plaintiff in substance like the tape had already been admitted the tape would have constituted merely cumulative evidence.

The appellant complains bitterly against the repeated statements of counsel for the defendants in his argument to the jury that the defendants were not negligent because the "standard of the neighborhood" or "standard of the block" approved of the use of bows and arrows. ■ The appellant correctly states that neighborhood standards are not the tests of negligence; the standard of the theoretical reasonable person is, of course, as broad as the world of experience. It is not limited to the block in which a tort is committed, or even to the community where the civil wrong occurs. As a psychological process, the application of the true standard involves the experience of each and all of the twelve jurors in their lifetime and their sense of right and wrong which doubtless has been with them since their own infancy. But theoretically,

at least, the test of reasonableness is as wide as the world—that is, it is not limited to a given locality or a given block in that locality. The difficulty, however, with this complaint of error made by appellant in this respect is that the trial court gave correct instructions at the end of the case with respect to the test of the reasonable person, and that there was no clear-cut or timely objection by appellant's counsel which can be pinpointed. In fact, the latter observation is true of several subordinate points complained of by the appellant; the record in those instances was not properly made. ▮ It is never permissible for a trial lawyer to take a chance with the jury by not making a pointed objection in timely fashion at the trial and later to argue that what the other side did was erroneous. It is incumbent upon a trial lawyer to object at the time that an alleged error occurs and to make his objection clearly. We find no errors in addition to those heretofore discussed which the appellant is in a position to urge because of failure to make proper specific objections in the lower court.

The judgment in favor of Lorraine Flohr and Robert Flohr is affirmed. The judgment in favor of Dean Flohr on a theory of negligence is affirmed. The judgment in favor of Dean Flohr with respect to the assault and battery contained in the third cause of action is reversed, and appellant is awarded her costs on appeal.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied April 16, 1968, and the petitions of the appellant and the respondents for a hearing by the Supreme Court were denied May 15, 1968.