Johnny Horton and Keith Horton v. Kirsten Renee Reaves, an infant, by the Continental National Bank, a Colorado corporation, her legally appointed guardian

## No. C-484

Kirsten Renee Reaves, an infant, by the Continental National Bank, a Colorado corporation, her legally appointed guardian v. Delores Horton, Johnny Horton, Keith Horton and Barbara Reaves

(526 P.2d 304)

Decided September 9, 1974.     Rehearing denied September 30, 1974.

Duane O. Littell, for petitioners in No. C-482 and for respondents Delores Horton, Johnny Horton and Keith Horton in No. C-484.

Kenneth N. Kripke, Louis Parkinson for respondent in No. C-482 and for petitioner in No. C-484.

Burnett, Horan & Hilgers, Mike Hilgers, for respondent Barbara Reaves in No. C-484.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

On March 4, 1970, Mrs. Reaves placed her five-week-old daughter upon a bed, encompassed by pillows and blankets to prevent the baby from falling off the bed. Mrs. Reaves then left the child unattended for two and one-half hours while she visited a next-door neighbor, Mrs. Horton. As Mrs. Reaves was returning to her home, Johnny and Keith Horton, four and three year-old children of Mrs. Horton, were seen jumping from the porch of the Reaves home and running across the yard to their home. Johnny said something to his mother which indicated that the Reaves baby might need attention. In response to the severe questioning of his mother, Johnny admitted that he had dropped the Reaves baby. Mrs. Horton immediately called to Mrs. Reaves to check on her child. Mrs. Reaves found the infant on the bedroom floor with a crushed skull.

Through her legal guardian the infant plaintiff brought this personal injury action against Johnny and Keith Horton, Mrs.

Horton, and Mrs. Reaves. The complaint alleged: That Johnny and Keith Horton entered the Reaves home without authority and assaulted and battered the child; that Mrs. Horton negligently supervised or failed to supervise her children, thereby allowing the assault and battery to occur; that Mrs. Reaves negligently failed to care for her child by leaving it unattended; that the action of Mrs. Reaves also constituted wanton or reckless disregard for the infant's well-being.

Prior to trial, the district court dismissed the simple negligence claim against Mrs. Reaves on grounds of parental immunity. At the close of the plaintiff's case, the court dismissed the claim against Mrs. Horton and the remaining claim against Mrs. Reaves by reason of insufficiency of evidence. The trial proceeded to conclusion against the two remaining defendants, Johnny and Keith Horton. Judgment was entered upon a jury verdict in favor of these defendants.

The Court of Appeals affirmed the district court in all respects except that it reversed and remanded the claim against Johnny and Keith Horton for a new trial on the basis of an improper jury instruction. We granted two petitions for certiorari to the Court of Appeals decision, *Reaves v. Horton,* 33 Colo. App. 186, 518 P.2d 1380 (1973). One petition for certiorari was by the infant against Mrs. Reaves and Mrs. Horton; and the other was by the boys, complaining as to the reversal. We have consolidated the writs. We affirm as to the first writ and reverse as to that of the boys.

## LIABILITY OF DELORES HORTON

### I.

The plaintiff first argues that the Court of Appeals erred in affirming the district court's ruling that there was insufficient evidence to submit the issue of Mrs. Horton's negligence to the jury.

As pointed out by the Court of Appeals, under the great weight of authority a parent is not liable for the torts of a child merely because of the parent-child relationship. *National Dairy Products Corp. v. Freschi,* 393 S.W.2d 48 (Mo. App. 1965); *see Hice v. Pullum,* 130 Colo. 302, 275

P.2d 193 (1954). Rather, a parent is liable for the tortious acts of the child only if the parent's negligence in supervising the child is the proximate cause of the injury. In cases involving a battery committed by a child, the parent's liability is predicated upon three factors: (1) that the child had a propensity to commit the particular abuse which caused the injury; (2) that the parent knew of the child's propensity; and (3) that the parent failed to restrain the child from committing the particular type of wrongful conduct causing injury. *Accord, Seifert v. Owen,* 10 Ariz. App. 483, 460 P.2d 19 (1969); *National Dairy Products Corp., supra.*

In this case there was no competent evidence establishing Mrs. Horton's liability. The only testimony concerning any previous assault-like behavior on the part of Johnny or Keith was supplied by Mrs. Reaves. She testified that on one occasion Johnny and Keith had pushed another Horton child off a bed. Mrs. Reaves' testimony states that Mrs. Horton reprimanded her children for this behavior. This latter testimony indicates that Mrs. Horton exercised due care in watching over Johnny and Keith. In fact, we have been unable to find any evidence in the record tending to show that Mrs. Horton was negligent in not preventing Johnny and Keith from engaging in the particular type of behavior of which the plaintiff has complained. Under these circumstances, the Court of Appeals was correct in concluding that the issue of Mrs. Horton's negligence should not have been submitted to the jury.

## II.

The plaintiff contends that the Court of Appeals erred in affirming the district court's ruling that certain statements of Mrs. Horton to the effect that she felt responsible for what had happened were not admissible in evidence. We are in agreement with the reasoning set forth in the Court of Appeals' opinion, supporting the conclusion that the statements were not competent evidence.

Plaintiff's counsel also attempted to elicit testimony from Mrs. Horton concerning her understanding of whether or not Johnny or Keith had dropped the infant plaintiff. This offered testimony constituted nothing more than an opinion

of a witness who had absolutely no personal knowledge as to whether the infant had been dropped. Therefore, the offered testimony was properly excluded. *Davis v. Bonebrake,* 135 Colo. 506, 313 P.2d 982 (1957).

## LIABILITY OF JOHNNY AND KEITH HORTON
### III.

The Court of Appeals ruled that the trial court failed to properly instruct the jury concerning the intent requirement of an infant charged with an intentional tort.

The jury was instructed that in order to find Keith and Johnny Horton liable, it had to find: (1) that the defendants were "capable of intending the harmful contact of another;" and (2) that the defendants "acted with the intent of making a harmful contact with the plaintiff's person." The question of the nature of the intent required of infants charged with intentional torts is a matter of first impression in this state. Some other jurisdictions have held that infants are liable for their intentional torts irrespective of intent to cause harm. The only intent required is that to commit the physical act. *Brown v. Dellinger,* 355 S.W.2d 742 (Tex. Civ. App. 1962); *Singer v. Marx,* 144 Cal. App. 2d 637, 301 P.2d 440 (1956); *Garratt v. Dailey,* 46 Wash. 2d 197, 279 P.2d 1091 (1955); *Ellis v. D'Angelo,* 116 Cal. App. 2d 310, 253 P.2d 675 (1953); *Weisbart v. Flohr,* 260 Cal. App. 2d 281, 67 Cal. Rptr. 114 (1968).

█ It is recognized that, often as a matter of policy, other jurisdictions hold infants liable for their intentional torts, so as to avoid inflicting financial loss upon an innocent victim. It is our view, however, that the requisite intent required must include some awareness of the natural consequences of intentional acts. Though the extent of the resulting harm need not be intended, nor even foreseen, the infant must appreciate the offensiveness or wrongfulness of his act before liability inures. *Masters v. Becker,* 22 App. Div. 2d 118, 254 N.Y.S.2d 633 (1964); *Baldinger v. Banks,* 26 Misc. 2d 1086, 201 N.Y.S.2d 629 (Sup. Ct. 1960).

The instructions given by the trial court are consistent with our pattern jury instructions.

"In order for plaintiff, (name), to recover from defendant,

(name), on his claim of battery, you must find that both of the following have been established:

"1. The defendant acted with the intent of making a (harmful) (or) (offensive) contact with the plaintiff's person (or with the person of another).

"2. The defendant's act resulted in a (harmful) (or) (offensive) contact with the person of the plaintiff . . . ." Colorado Jury Instructions 20:5.

*See Restatement (Second) of Torts* § 13 (1965).

■ There is sufficient authority to support the Court of Appeals ruling on this issue. However, we believe that the law of this state should require, in the commission by the infant of the intentional act, an intent to make a harmful contact. As already indicated the infant need not intend the consequences which actually follow, but it must appreciate the fact that the contact may be harmful.

LIABILITY OF MRS. REAVES
IV.

■ The plaintiff argues that the trial court erred in dismissing the claims asserted against Mrs. Reaves. We agree with the trial court and the Court of Appeals' analysis and conclusion that, under the doctrine of parental immunity, liability of a parent can be predicated only upon wilful and wanton misconduct. Therefore, the simple negligence claim against Mrs. Reaves was properly dismissed. We also agree with the trial court and the Court of Appeals that there was insufficient evidence of wilful and wanton misconduct on the part of Mrs. Reaves to submit the question to the jury.

The ruling of the Court of Appeals is affirmed, except the portion thereof relating to the instructions on the liability of Johnny and Keith Horton, as to which it is reversed, and the cause is returned to the Court of Appeals with directions that it issue an affirming remittitur to the district court.

MR. CHIEF JUSTICE PRINGLE concurs in part and dissents in part. MR. JUSTICE KELLEY specially concurs.

MR. CHIEF JUSTICE PRINGLE concurring in part and dissenting in part:

I concur in Sections I, II and III of the majority opinion. I must, however, respectfully dissent to Section IV of the opinion of the Court. In my view when a mother leaves a five-week-old child alone on a bed in an unlocked house for two and one-half hours while she engages in conversation with a neighbor and injury results to her child as a result of her negligence, there is at least a jury question as to whether her conduct was wilful and wanton under the circumstances.

MR. JUSTICE KELLEY, specially concurring:

In reference to the liability of Johnny Horton and Keith Horton for an intentional tort, I would hold that infants below some specific age cannot, as a matter of law, be held liable.

We have held here that in the commission by the infant of an intentional tort the law requires a *harmful* contact. The infant need not intend the consequences which actually result from the harmful contact, but he must appreciate the fact that the contact may be harmful.

In *Benallo v. Bare,* 162 Colo. 22, 427 P.2d 323 (1967), we adopted a rule that a child six years of age or younger is incapable of being contributorily negligent as a matter of law. If this is a reasonable presumption, then it seems to me that, at least, in the case of infants three and four years of age, we should hold, as a matter of law, that they are incapable of appreciating that their intentionally tortious contacts may be harmful.