Hillsborough,
No. 5505.

NORMAN A. BRIERE & a. v. MAURICE S. BRIERE.

Argued October 4, 1966.
Decided November 30, 1966.

*King, Nixon & Christy* and *Thomas J. Tessier* (*Mr. Tessier* orally), for the plaintiffs.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Alan Hall* (*Mr. Hall* orally), for the defendant.

BLANDIN, J. The parties agree that the issue is whether unemancipated minor children may sue their father in tort for injuries sustained in an automobile accident. If they may, their exceptions to the dismissal of their actions must be sustained. Whether their mother may recover for consequential damages depends upon questions of fact, determinable at the trial and presently not before us. *Woodman* v. *Peck*, 90 N. H. 292, 294; *McConnell* v. *Lamontagne*, 82 N. H. 423; *Bullard* v. *McCarthy*, 89 N. H. 158, 164; see *Levesque* v. *Levesque*, 99 N. H. 147, 149-150, dissenting opinion. If the children's actions cannot be maintained, no exceptions lie to the Court's dismissal of their suits and that of their mother for consequential damages. *Courage* v. *Carleton*, 96 N. H. 348. It should be noted that the Presiding Justice (*Loughlin*, J.) acted in accordance with the law then existing in dismissing all the actions. *Levesque* v. *Levesque*, 99 N. H. 147.

In the scholarly landmark opinion of Chief Justice *Peaslee* in *Dunlap* v. *Dunlap*, 84 N. H. 352, written in 1930, two statements appear which go to the heart of the problem before us. One is that the only substantial reasons for denying an unemancipated minor the right to sue his father are the maintenance of "parental authority and the family peace." *Id.*, 361. The other significant statement is that "the issue is a practical one." *Id.*, 363.

In deciding this case on what appear to us to be these fundamental principles, we are not unmindful of the vast amount of writing which has been done on the subject by courts, textbook writers and others. In the 4-3 decision in *Hastings* v. *Hastings*, 33 N. J. 247, denying the right of an unemancipated minor to sue his father for injuries resulting from an automobile accident, the majority opinion lists an impressive number of court decisions supporting its view. *Id.*, 249, 250. The dissenting minority counters with an equally impressive collection dominated by text writers, professors and dissident judges maintaining the opposite opinion. *Id.*, 254-255. Numerous writings have been added since *Hastings* was decided in 1960, the discussion of which would serve no useful purpose. *Dean* v. *Smith*, 106 N. H. 314, 317.

We do not believe that our case should be determined by the number of authorities which support one rule or the other, any more than that a jury should resolve issues according to the number of witnesses who appear for the plaintiff or the defendant.

The majority of our court has stated unequivocally that the principle that an unemancipated minor may not sue a parent in tort is a "court-made rule," and that it is the duty of the judiciary to examine it and make such changes as justice requires when the Legislature has chosen not to act. *Dean* v. *Smith, supra,* 317. See *Ramsey* v. *Anctil,* 106 N. H. 375, 378. The present opinion is written in the light of this decision, which is now the law of this state. *Gaudreau* v. *Gaudreau,* 106 N. H. 551, 554; *Dean* v. *Smith, supra.* It is also written with awareness that the law of torts itself is not, as sometimes erroneously considered, "a law of wrongs." Rather, it is a means "for the creation and protection of rights" — a method for providing compensation for harm caused another. Seavey, Cogitations on Torts, *pp.* 5, 6 (1954). In the field of torts also, conditions are not static but dynamic, as the law grows and changes to meet new social and economic conditions.

With this in mind, we start with the proposition that there was no common-law rule that a child could not sue a parent and that, generally speaking, a minor has the same right to redress for wrongs as any other individual. *Dunlap* v. *Dunlap, supra,* 354, 363. A minor may contract with his father and sue on the contract (*Hall* v. *Hall,* 44 N. H. 293), or he may bring an action to protect his property rights (*Crowley* v. *Crowley,* 72 N. H. 241) or against his parents for malicious assault. *Zebnik* v. *Rozmus,* 81 N. H. 45.

The main reasons advanced by the defendant in support of his position in the present case, which still represents a steadily eroded majority view, are (1) the preservation of parental authority and family harmony; (2) depletion of the family exchequer; and (3) the danger of fraud and collusion. Analyzing these reasons in reverse order, we must agree that there is danger of fraud and collusion. However, this is true of suits between husband and wife, which we allow (*Walker* v. *Walker,* 106 N. H. 282), between near relatives, and between host and guest, often intimate friends (see *Zellers* v. *Chase,* 105 N. H. 266), all of which stand on the same footing as actions between strangers. Our court system, with its attorneys and juries, is experienced and reasonably well

fitted to ferret out the chicanery which might exist in such cases. In short, we are unwilling to espouse the doctrine that the mere opportunity for fraud and collusion should be an insuperable barrier to an honest and meritorious action by a minor.

As to the depletion of the family exchequer, the court in the *Dunlap* case summarily rejected this argument as having no substantial weight and said that it ignored "the parent's power to distribute favors as he will, and leaves out of the picture the depletion of the child's assets of health and strength through the injury." *Id.*, 361. To this may be added today's reality that if the father has means, he will almost inevitably carry insurance, and if he has not, the chances of anyone bringing suit for the child are remote. See *Dean* v. *Smith*, 106 N. H. 314, 317-318. We agree that the existence of insurance should not impose a duty upon a parent where none existed before. *Dean* v. *Smith, supra.* However, as a practical matter, the prevalence of insurance cannot be ignored in determining whether a court should continue to discriminate against a class of individuals by depriving them of a right enjoyed by all other individuals. *Dunlap* v. *Dunlap, supra*; *Dean* v. *Smith, supra.*

We come then to the decisive consideration, which is whether parental authority and family well-being will be appreciably harmed today by allowing an unemancipated minor the right to sue a parent in tort. *Dunlap* v. *Dunlap, supra*, 352. We begin here with the proposition that a parent nearly always desires above all to protect and benefit his children and spouse. So far as the maintenance of family peace is concerned, we have already pointed out that suits between husband and wife have long been permitted ( *Gilman* v. *Gilman*, 78 N. H. 4 ) and that in many circumstances actions may also be maintained by a child against a parent. *Hall* v. *Hall*, 44 N. H. 293; *Crowley* v. *Crowley*, 72 N. H. 241; *Zebnik* v. *Rozmus*, 81 N. H. 45. The doctrines of the above cases have already been substantially extended by *Dean* v. *Smith, supra*, and *Gaudreau* v. *Gaudreau, supra.*

Parental authority does not appear to be in any real jeopardy in the circumstances before us. In fact, it is difficult, if not impossible, to perceive how such authority and family peace can be jeopardized more in an ordinary tort action for negligence by an unemancipated minor against a parent than by an action in contract or to protect property rights or for an assault — all of

which are permitted in this state. See *Dean* v. *Smith*, 106 N. H. 314, 317; see also, Prosser on Torts ( 3d *ed.* ) *p.* 887. To allow such a distinction as now exists between tort and other forms of action is indeed not only to perpetuate confusion and irreconcilable decisions ( see *Overlock* v. *Ruedemann*, 147 Conn. 649, 654 ), but to entrench a policy from which changing times have drained most of such vitality as it may have once possessed. See *Dunlap* v. *Dunlap*, 84 N. H. 352, 359; *Hastings* v. *Hastings*, 33 N. J. 247, dissenting opinion by *Jacobs*, J., 254-255.

In conclusion, we hold that the danger of fraud and collusion and of depletion of the family exchequer, which were characterized as " mere makeweights " and " unsubstantial " considerations in *Dunlap* ( *p.* 361 ), have become, if anything, less substantial and less weighty than when *Dunlap* was decided in 1930. They furnish no sufficient grounds for denying unemancipated minors as a class a right commonly enjoyed by other individuals. See *Gaudreau* v. *Gaudreau*, 106 N. H. 551, 553. We further believe that family peace and parental authority, in the overwhelming majority of cases, will be threatened less by an unemancipated minor's suit for tort against a parent, where the latter is generally protected from loss by insurance, than by an action for breach of contract or to enforce property rights where the parent would ordinarily have to pay a verdict from his own pocket. See Prosser on Torts, *s.* 101, *pp.* 677-678 ( 1955 ); 1 Harper & James, The Law of Torts, *s.* 8.11, *pp.* 649-650 ( 1956 ); II Harper & James, The Law of Torts, *s.* 13.4, *p.* 767 ( 1956 ).

The *Dean* and *Gaudreau* cases have already charted the course for a voyage upon which it appears we, as well as many other courts, will inevitably embark. It would serve no useful purpose to hesitate longer because we are faced with objections based upon distinctions where, in the conditions existing today, no substantial differences can be perceived. We hold that the minor's actions may be maintained. The case of *Levesque* v. *Levesque*, 99 N. H. 147, is hereby overruled.

Whether the mother's suit is sustainable depends, as previously stated, upon facts to be determined upon trial.

The order is

*Exceptions sustained.*

All concurred.