Nathan UNAH, a minor, By and Through his mother and next friend, Mary Jane UNAH, and Mary Jane Unah, Appellants,

v.

A.F. MARTIN, and Freeland F. Unah, Appellees.

No. 53387.

Supreme Court of Oklahoma.

Feb. 7, 1984.

As Corrected Feb. 21, 1984.

John W. Norman, Oklahoma City, for appellants.

W.R. Bergstrasser, Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellee, Freeland Unah.

ALMA D. WILSON, Justice.

This appeal presents us with the opportunity to review our adherence to the rule of parental immunity which bars an unemancipated minor child from bringing an action for ordinary negligence against his parent.[1]

In this case, Nathan Unah, an unemancipated minor child, was injured in an automobile accident allegedly caused by the combined negligence of his father, defendant Freeland Unah, and defendant A.F. Martin. Nathan, by and through his mother and next friend, Mary Jane Unah, and Mary Jane Unah, individually, brought this action to recover for personal injuries Nathan has suffered as a result of the accident. On the basis of parental immunity, defendant Unah filed a motion for summary judgment, which was granted. Plaintiff Unah appeals this ruling and urges this Court to either completely abrogate the doctrine of parental immunity, or at least to abrogate it in cases where a child under the age of emancipation suffers injuries resulting from a parent's negligent operation of a motor vehicle.

A survey of the jurisdictions reflects that the modern trend is either to abolish or to modify the doctrine of parental immunity.[2] This Court's view, as expressed in *Tucker*

---

1. As a prefatory matter we note that we have indicated in dicta that a parent's liability for intentional torts in civil suits is not within the realm of parental immunity. *See Tucker v. Tucker,* 395 P.2d 67 (Okl.1974) and *Wooden v. Hale,* 426 P.2d 679 (Okl.1967).

2. Those jurisdictions which have abrogated parental immunity, either partially or entirely include: *Hebel v. Hebel,* 435 P.2d 8 (Alaska 1967); *Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282 (1970); *Gibson v. Gibson,* 3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 (1971); Conn.Gen.Stat. § 52–572(c) (Supp.1981); *Williams v. Williams,* 369 A.2d 669 (Del.1976); *Ard v. Ard,* 395 So.2d 586 (Fla.App.1981); *Petersen v. City & County,* 51 Haw. 484, 462 P.2d 1007 (1969); *Schenk v. Schenk,* 100 Ill.App.2d 199, 241 N.E.2d 12 (1968); *Turner v. Turner,* 304 N.W.2d 786 (Iowa 1981); *Nocktonick v. Nocktonick,* 227 Kan. 758, 611 P.2d 135 (1980); *Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky.1971); *Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975); *Black v. Solmitz,* 409 A.2d 634 (Me.1979); *Plumley v. Klein,* 388 Mich. 1, 199 N.W.2d 169 (1972); *Silesky v. Kelman,* 281 Minn. 431, 161 N.W.2d 631 (1968); *Transamerica Ins. Co. v. Royle,* 656 P.2d 820 (Mont.1983); *Briere v. Briere,* 107 N.H. 432, 224 A.2d 588 (1966); *France v. A.P.A. Transport Corp.,* 56 N.J. 500, 267 A.2d 490 (1970); *Gelbman v. Gelbman,* 23 N.Y.2d 434, 245 N.E.2d 192, 297 N.Y.S.2d 529 (1969); *Rupert v. Stienne,* 90 Nev. 397, 528 P.2d 1013 (1974); N.C.Gen.Stat. § 1–539–21 (Supp.1981); *Nuelle v. Wells,* 154 N.W.2d 364 (N.D.1967); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971); *Silva v. Silva,* 446 A.2d 1013 (R.I.1982); *Elam v. Elam,* 275 S.C. 132, 268 S.E.2d 109 (1980); *Wood v. Wood,* 135

*v. Tucker*, 395 P.2d 67 (Okl.1964), heretofore has been to enforce the doctrine where suit was brought by a minor child for injuries suffered due to a parent's ordinary negligence. In *Tucker*, the plaintiff, a minor child, sued for damages caused by his mother's negligence in operation of an automobile. In the interest of preservation of the family and protection of the parent-child relationship, we upheld the rule of immunity. In *Tucker*, and again in *Workman v. Workman*, 498 P.2d 1384 (Okl. 1972), we responded to the argument advanced that the existence of the parent's public liability insurance militated against the reason for parental immunity—by stating that Oklahoma had no compulsory liability insurance law, and unless and until it appeared that the insured parent be legally obligated to pay, we would not consider the question of insurance.

The time to which we deferred in *Tucker* and *Workman* has arrived, for in 1976, provision for compulsory automobile liability insurance came into force in Oklahoma. Laws 1976, c. 176, § 1, operative December 11, 1976, now as amended, 47 O.S.Supp. 1983, § 7–601. After review of our prior decisions and consideration of authorities as hereafter discussed, we have concluded that an unemancipated minor may recover to the extent of his parent's liability insurance coverage for injuries caused by the parent's negligent operation of a motor vehicle.

The origin of parental immunity in American jurisdictions can be traced to a single case, *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (1891), where the Supreme Court of Mississippi sought to protect "the repose of families and the best interests of society" by forbidding minor children to assert claims for personal injuries suffered at the hands of the parent. The *Hewellette* court refused to allow a child to maintain a false imprisonment action against her mother for maliciously confining her in an insane asylum. That case was followed by *McKelvey v. McKelvey*, 111 Tenn. 388, 77 S.W. 664 (1903), and *Roller v. Roller*, 37 Wash. 242, 79 P. 788 (1905). In the *McKelvey* case the Tennessee court denied a minor the right to sue her parents for cruel and inhuman treatment, and in the *Roller* case, the Washington court denied a minor the right to sue her father who had raped her. The doctrine established in this triology of cases became popular to protect not only the interests of the family, but likewise where liability insurance was available, to protect the insurer against collusive actions between parent and child. *See Black v. Solmitz*, 409 A.2d 634, 636 (Me.1979). Although readily accepted by most jurisdictions, the doctrine has been criticized by legal commentators and judges alike. *See, e.g.*, Prosser, Law of Torts, § 122 (4th ed. 1971); 1 Harper & James, Law of Torts, § 8.11 at 650 (1956); McCurdy, "Torts Between Parent and Child," 5 Vill.L.Rev. 521 (1960).

An examination of the case law shows that courts applying the doctrine have relied on several policy reasons for upholding

Vt. 119, 370 A.2d 191 (1977); *Smith v. Kauffman*, 212 Va. 181, 183 S.E.2d 190 (1971); *Merrick v. Sutterlin*, 93 Wash.2d 411, 610 P.2d 891 (1980); *Lee v. Comer*, 224 S.E.2d 721 (W.Va. 1976); *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193 (1963).
States which have adopted and retained the immunity: *Owens v. Auto Mut. Indem. Co.*, 235 Ala. 9, 177 So. 133 (1937); *Rambo v. Rambo*, 195 Ark. 832, 114 S.W.2d 468 (1938); *Horton v. Reaves*, 186 Colo. 149, 526 P.2d 304 (1974); *Eschen v. Roney*, 127 Ga.App. 719, 194 S.E.2d 589 (1972); *Pedigo v. Rowley*, 101 Idaho 201, 610 P.2d 560 (1980); *Vaughan v. Vaughan*, 161 Ind.App. 497, 316 N.E.2d 455 (1974); *Walker v. Milton*, 263 La. 555, 268 So.2d 654 (1972);

*Montz v. Mendaloff*, 40 Md.App. 220, 388 A.2d 568 (1978); *McNeal v. Administrator of Estate of McNeal*, 254 So.2d 521 (Miss.1971); *Bahr v. Bahr*, 478 S.W.2d 400 (Mo.1972), overruled on other grounds, *Fugate v. Fugate*, 582 S.W.2d 663 (Mo.1979); *Pullen v. Novak*, 169 Neb. 211, 99 N.W.2d 16 (1959); *Teramano v. Teramano*, 6 Ohio St.2d 117, 216 N.E.2d 375 (1966); *Chaffin v. Chaffin*, 239 Or. 374, 397 P.2d 771 (1964); *Campbell v. Gruttenmeyer*, 222 Tenn. 133, 432 S.W.2d 894 (1968); *Felderhoff v. Felderhoff*, 473 S.W.2d 928 (Tex.1971); *Oldman v. Bartshe*, 480 P.2d 99 (Wyo.1971).

parental immunity. In *Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980), five frequently cited justifications are identified: (1) disturbance of domestic harmony and tranquility; (2) interference with parental care, discipline, and control; (3) depletion of family assets in favor of the claimant at the expense of other children in the family; (4) the possibility of inheritance by the parent of the amount received in damages by the child; and (5) the danger of fraud and collusion between parent and child. Of these, the domestic tranquility policy is the rationale most frequently offered. *See* 1 Harper and James, Law of Torts § 8.11 at 649.

■ We are of the opinion that today these policy reasons lose much persuasive force and provide no longer a sound basis for disallowing recovery by an unemancipated minor child for injuries caused by a parent's negligent operation of a motor vehicle. While the existence of liability insurance—in this case compulsory coverage—does not create liability, its presence is significant, and cannot be ignored in the determination of whether our courts should continue to deprive unemancipated minors the right enjoyed by all other individuals. We agree with the view expressed in *Streenz v. Streenz*, 106 Ariz. 86, 88, 471 P.2d 282, 284 (1970), that "[w]here such insurance exists, the domestic tranquility argument is hollow, for in reality the sought after litigation is not between child and parent but between child and parent's insurance carrier." Disruption of domestic tranquility is much less likely where the minor child can be compensated for his losses under the parent's liability coverage, which additionally eases any financial strain on the family resulting from the accident. We find further support in a leading case, *Sorensen v. Sorensen*, 369 Mass. 350, 339 N.E.2d 907, 914 (1975), where it was succinctly stated that "[w]hen insurance is involved, the action between parent and child is not truly adversary; both parties seek recovery from the insur-ance carrier to create a fund for the child's medical care and support without depleting the family's other assets." *Accord, Williams v. Williams*, 369 A.2d 669 (Del.1976). Under these circumstances, the effect such suit would have on parental discipline or the parent-child relationship is realistically negligible.

■ The possibility of fraud and collusion by family members against the insurance carrier has also been cited as a prominent reason for denying suit by a minor child against his insured parent. This view is readily countered with the argument that the possibility of fraud or collusion exists to a degree in any case, and that as a part of the fact-finding process, reliance is well-placed on the triers-of-fact to detect collusive and fraudulent claims. While it may be possible that some collusive claims will succeed, we do not believe apprehension of them justifies a blanket denial of meritorious claims. *See Transamerica Ins. Co. v. Royle*, 656 P.2d 820 (Mont.1983); *Sorensen, supra.*

Particularly persuasive is the New York Court of Appeals reasoning in its rejection of the collusion argument in *Gelbman v. Gelbman*, 23 N.Y.2d 434, 438, 297 N.Y.S.2d 529, 532, 245 N.E.2d 192, 194 (1969), a leading case dealing with intrafamily tort liability in general, where an injured parent sought to recover against her unemancipated son for injuries suffered in an automobile accident. We direct attention to the following language of that court:

"The argument has been advanced that, by permitting suits between parent and child for nonwillful negligent acts, we will be encouraging fraudulent law suits. The argument fails to explain how the possibility of fraud would be magically removed merely by the child's attainment of legal majority. Nor does the argument pretend to present the first instance in which there is the possibility of a collusive and fraudulent suit. There are analogous situations in which we rely upon the ability of the jury to distinguish

between valid and fraudulent claims. The effectiveness of the jury system will pertain in the present situation. The definite and vital interest of society in protecting people from losses resulting from accidents should remain paramount. (See James, Accident Liability Reconsidered; The Impact of Liability Insurance, 57 Yale L.J. 549.)"

▬ Public policy has been the sole justification for adoption and proliferation of the judicially created doctrine of parental immunity. The sweep of this doctrine which developed last century must be adjusted to meet legitimate interests under contemporary standards and conditions. We can no longer countenance the legal anomaly where two minor children, negligently injured in the operation of a motor vehicle, one of them a stranger, could recover compensation for his injuries and the other one, a minor child of the operator of the vehicle, could not. Today, where all other passengers in a car are mandatorily protected by liability coverage it is unfair and against public interest to deprive an unemancipated minor the benefit of recovery. In this regard we further observe that familial harmony is more likely to be disturbed where the family's fund is depleted because the proceeds from liability insurance cannot be reached.

▬ We are of the opinion that the rule of parental immunity in vehicular negligence cases has no rational basis under present circumstances. We hereby qualify the rule of parental immunity in this jurisdiction to allow an action for negligence arising from an automobile accident brought on behalf of an unemancipated minor child against a parent to the extent of the parent's automobile liability insurance. This partial abrogation of parental immunity does not create a legal duty where none existed before, rather it simply removes a disability which had previously barred recovery. *See, Gelbman, supra.* Our holding today is limited to the factual situation before us and is not authority for

abrogation of parental immunity to actions in negligence other than automobile accidents, for the concept of protection of family unity and harmony retains its vitality. The significance of the existence of compulsory liability insurance, however, is that in automobile cases it impersonalizes the litigation between child and parent and therefore tends not to undermine the family relationship.

▬ This Court bears the responsibility to change a court-made rule of law when it deems the change necessary in the interests of justice. Therefore, to the extent that *Tucker* and *Workman* would bar recovery in the situation before us, they are overruled, as are *Wooden v. Hale,* 426 P.2d 679 (Okl.1967) and *Hale v. Hale,* 426 P.2d 681 (Okl.1967), on this point. Since neither fairness nor any principle of public policy dictates that we give purely prospective application to the change effected by today's decision, it shall be given effect to this case and, prospectively, to all other factually similar cases occurring after mandate herein is issued. *Snethen v. Oklahoma State Union of the Farmers Educ. and Coop. Union of America,* 664 P.2d 377 (Okl.1983).

The decision of the District Court granting summary judgment is REVERSED and the cause is REMANDED for further proceedings consistent with this opinion.

BARNES, C.J., and LAVENDER, J., concur.

HODGES, DOOLIN and OPALA, JJ., concur specially.

SIMMS, V.C.J., and HARGRAVE, J., dissent.

HODGES, Justice, concurring specially:

The majority refuses to speculate what limits, if any, should be placed on the doctrine of parental immunity. Instead, it timorously awaits another day to confront doctrinal change. I am convinced that the day

is today, and that limited abrogation is incongruous.

The Okla. Const. Art. 2 § 6 provides that the courts of justice of this state shall be open to every person and certain remedy afforded for every wrong and for every injury. The trend is toward the abolition of parental immunity;[1] the logic and the letter of the law also lie in that direction. I am persuaded that the best interest of justice and fairness to all concerned is both legally and equitably satisfied by revocation of intra family immunity in all personal injury cases except those within the ambit of the exercise of parental authority and discretion.

I would overrule all inconsistent cases, and hold that a child may maintain a lawsuit against the parent for injuries suffered as the result of the alleged ordinary negligence of the parent with two exceptions, either the act involves: 1) an exercise of reasonable parental authority over the child, or 2) an exercise of reasonable parental discretion which concerns the provision of food, clothing, housing, medical and dental services and other care.[2]

I am authorized to state that Justice John B. Doolin concurs in the views expressed herein.

OPALA, Justice, concurring:

This action by an unemancipated minor child against his father culminated in summary judgment for the defendant. The precise question before us is whether parental immunity should bar a filial suit for injuries resulting from vehicular negligence. The court's opinion sanctions filial recovery "to the extent of the parent's automobile liability insurance". Although I join the court's pronouncement, I write separately to give my reasons for acceding to its narrow terms.

Parental immunity was confined at common law to reasonable and moderate chastisement. A parent did not stand shielded from liability for that harm suffered by the child which was caused by behavior unrelated to administration of discipline or was beyond the limits of moderate punishment. T. Reeve, The Law of Baron and Femme 420, 421 (3rd ed. 1862). The American adaptation of the common-law norm came to recognize a far-too-inflated version of the English antecedents. *Sorensen v. Sorensen,* 369 Mass. 350, 358–360, 339 N.E.2d 907, 909 [1975]; *Transamerica Insurance Co. v. Royle,* 656 P.2d 820, 823 [Mont.1983]. Parent-Child Tort Immunity: Time for Maryland to Abrogate an Anachronism, 11 Baltimore L.R. 435, 436–439 [1982].

While today's abrogation of the immunity's grossly overextended sweep doubtless is conceptually incomplete and may be rested on jurisprudentially fragile underpinnings because it confines filial recovery to *insured losses* from *vehicular negligence,* the court's pronouncement *does* answer the precise question presented by the facts before us. No more is required by the case. An all-out re-examination of parental immunity doctrine must await another day.

SIMMS, Vice Chief Justice, dissenting.

I am compelled to strongly dissent. As I understand the rationale of the majority opinion, the primary reason for abrogating the well established doctrine of parental immunity in torts is the existence of compulsory liability insurance. Of primary importance here is the fact that the accident giving rise to this purported cause of action occurred on March 19, 1976. As the majority correctly points out, compulsory insurance did not become the law of Oklahoma until December 11, 1976, well past the time this cause of action allegedly arose.

It is clear, therefore, that the majority's reliance on the existence of compulsory insurance as a reason to abrogate the parental immunity doctrine is completely misplaced under the facts of this case.

**1.** See majority opinion, note 2.

**2.** *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193 (1965).

If the majority is determined to overturn the law of Oklahoma, settled since statehood, and hold that a parent may be liable in tort to his children, I feel constrained to make the following observations.

The mere existence of liability insurance does not automatically remove the inherent danger to the parent-child relationship and family harmony in such a situation.

In the very recent decision of *Ard v. Ard,* Fla., 414 So.2d 1066 (1982), the Florida court ruled that an unemancipated minor child could bring suit against his mother for damages sustained because of her alleged negligence in unloading him from a motor vehicle, but only to the extent of mother's insurance coverage. I am persuaded by the rationale of the dissenting opinion by Justice Boyd [1]:

"Parental abuse or neglect may be a ground for state intervention in appropriate proceedings, but ordinary negligence can take so many forms that we should not allow a tort action against a parent on behalf of a child.

"The principal reason for parental immunity is to prevent the disruption of family unity and harmony. Such disruption would inevitably follow if tort actions for ordinary negligence were allowed to be brought against a parent by his or her child. The Court majority reasons that if the parent has insurance covering his liability to the child for negligence, then in a suit by the child against the parent their interests do not conflict but converge. I disagree. Being on opposite sides of a lawsuit puts people in an adversary position. For one thing, a liability insurer is entitled to expect its insured to behave in an adversary manner towards the injured plaintiff. Therefore, the interests of parent and child in such a situation conflict in a very real way.

"Parents may insure against the possibility of injuries to their children. They may seek financial protection from the consequences of accidental injuries in the form of hospitalization, casualty, and disability insurance coverages. It is awkward and unnecessary for parents to seek such financial protection in the form of liability insurance covering the parents. The infinite range of possible accidents that will inevitably happen during a child's minority, and which are inextricably intertwined with parental conduct both reasonable and negligent, does not allow for a rational process of delineating rules and standards of parental care."

Even the majority in *Ard* admitted the basic soundness of the family harmony argument: "Protecting the family unit is a significant public policy behind parental immunity. We are greatly concerned by an intrusion that might adversely affect the family relationship. Litigation between family members would be such an intrusion."

The threat to the unity and harmony of the family and the danger of fraud and collusion seem very real and obvious to me.

Justice McFarland of the Arizona Supreme Court expressed these fears very well in his forceful dissent in *Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282 (1970), stating:

" 'I am forced to dissent because there has been presented no persuasive authority that the cure proposed by the majority is not worse than the disease.

The single question presented in this case is simple enough: should an unemancipated child be permitted to maintain a cause of action against its parents for damages resulting from the parents' tortious conduct. Although this is an automobile negligence case, the striking down of the immunity doctrine is not limited to this field. The implications in the majority opinion make it plain that

---

**1.** Also see the dissenting opinion in *Nocktonick v. Nocktonick,* 227 Kan. 758, 611 P.1d 135 (1980).

the area they have opened is analogous to Gertrude Stein's famous Rose; a tort is a tort is a tort. If the immunity from suit is removed for an automobile tort, it follows logically that it is removed for all negligent acts—for example, those which may occur in the sanctity of the home. Needless to say, the "sanctity" also includes the "secrecy" of the home.

A vacuum cleaner forgetfully kept near an entrance; a open, live toaster wire carelessly ignored by the do-it-yourself father; a teakettle or pot of boiling water unthinkingly left within the reach of a toddler, all become the elements of a suit by the infant child against his parents. It takes but little imagination to conceive of almost unlimited examples. Liability lurks in every corner of the household. And when tragedy strikes through the inadvertent, but nevertheless tortious, hand of the child's parent (let us say the father), that same parent must decide—or at least participate in a family decision—whether or not suit should be instituted for the benefit of the child. The father must decide whether his duties as a father compel him to pass upon the possibility of a recovery against himself for accidental injuries to his child of tender years and take the child to some one to act as guardian ad litem to bring the suit against himself. The father must then assume the role of defendant and, presumably, assist in good faith in the defense of the suit in accordance with the terms of the "cooperation clause" of his insurance policy.' "

As this Court is painfully aware, we live in a litigious time. Adding parents and their children to the list of those who may play the tort lawsuit game does not seem to me to be a good idea. I am afraid that whatever good, if any, might come of this opinion will be solidly outweighed by the harm resulting from it.

Few courts have considered the effect upon the volume of insurance claims and the possibility of an increase in rates or of exclusion of the risk. Perhaps that is because such issues involve a fact-finding pursuit more suitable for the legislative branch than the judicial.

One of the dissenting opinions in *Plumley v. Klein*, 388 Mich. 1, 199 N.W.2d 169 (1972) expressed concern over the attitude underlying the trend away from the parental immunity doctrine, the "let 'em sue if there is insurance" philosophy. In another bitter dissent to the *Plumley* majority, Justice Black wrote: "I suppose the majority has concluded that a little tampering with family tranquility is not too great a price to pay for the great benefaction of friendly intramural lawsuits at the expense of the premium-paying public."

The law imposes a duty to rear and discipline children, and parents must be given a wide sphere of discretion. If we allow an exception from the doctrine of parental immunity for automobile negligence cases involving insurance, there is no rational legal theory which could long maintain those limits on suits against parents. Parents and families would then have no protection from tort liability for exercising their parental discretion.

I am not convinced that the existence of a source of money is, in and of itself, sufficient good reason to create a cause of action where none existed before. It appears to me that the tail is wagging this dog.

Whether abrogation of parental immunity for torts is an idea whose time has now come, is a legislative decision and we should leave it to the Legislature to sort through the many policy considerations which should play a role in this decision.

I am authorized to state that Justice HARGRAVE joins with me in the views expressed above.