**Laurie BRUNNER, As Guardian ad Litem for Jeremiah Brunner, A Minor, and Laurie Brunner, As an Individual, Plaintiff,**

v.

**HUTCHINSON DIVISION, LEAR–SIE-GLER, INC., A Kansas Corporation, Defendant and Third–Party Plaintiff,**

v.

**Brad BRUNNER and H.L. Brunner and Sons, Third–Party Defendants.**

No. Civ. 89–5065.

United States District Court,
D. South Dakota, W.D.

March 15, 1991.

Ken Barker, Quinn Day & Barker, Belle Fourche, S.D., Robert A. Haivala, Sturgis, S.D., for plaintiff.

Gene Bushnell, Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, S.D., for defendant and third-party plaintiff.

Craig Pfeifle, Lynn Jackson Shultz & Lebrun, Rapid City, S.D., for third-party defendants.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

This case arises from an injury to plaintiff's ward, Jeremiah Brunner, age 2½ at the time of the injury, which occurred on the Brunner family farm near Vale, South Dakota. The injury was the result of contact between the infant Brunner and machinery manufactured by defendant and third-party plaintiff Hutchinson Division, Lear–Siegler, Inc. (Lear–Siegler). Lear–Siegler subsequently filed a third-party complaint seeking indemnity and/or contribution from third-party defendants Brad Brunner and H.L. Brunner & Sons.

Third-party defendants have made a motion for summary judgment alleging that Lear–Siegler is barred by the doctrine of parental immunity from bringing a contribution claim against Jeremiah's father and his business partnership. Lear–Siegler defends against the summary judgment motion on the grounds that the State of South Dakota has never recognized the doctrine of parental immunity, and, to the contrary, has statutorily mandated access to the courts to all persons. This Court does not accept third-party defendants' arguments that the doctrine of parental immunity operates in this jurisdiction to shield a parent from a cause of action by the parent's offspring. For reasons set forth below, this Court prefers to adopt the more modern approach of the Restatement (Second) of Torts § 895(g) (1977), which simply recognizes that in limited circumstances a parent is privileged from liability with respect to certain causes of action. Among those causes of action for which a parent is privileged is a claim of negligent supervision, a cause of action that is not recognized at law in the State of South Dakota. Accordingly, the Court grants the third-party defendants' motion for summary judgment. Jurisdiction over this action is properly vested in this Court by reason that the requirements of 28 U.S.C. § 1332 regarding jurisdictional amount and diversity of citizenship are satisfied.

## FACTS

On the day of the accident Jeremiah was accompanying his father, Brad Brunner, as the elder Brunner carried out his day's labors on the Brunner farm. Among the chores Brad Brunner had scheduled for that day was the removal of corn from a storage bin for transportation to the cattle feedlot. The grain was to be removed from the bin and loaded onto the truck with the assistance of a mechanical auger, a screw device which scoops and pushes the grain from the silo through a series of rotating blades. The elder Brunner positioned the truck to receive the grain, switched the augers on, and took Jeremiah into the farm house to turn the boy over to his mother.

Jeremiah's mother, Laurie Brunner, was ill and unable to care her son at that time so the responsibility of supervising Jeremiah fell to Brad Brunner, who brought the boy back to the truck and sat with him in the cab while the augers were operating. Brad Brunner concedes that he was under no time constraints which required him to move the grain immediately. During the course of the unloading, Brad Brunner found it necessary to leave the truck to inspect the operation of the augers. Before leaving the truck, Brunner told the boy to stay in the truck, he locked the door of the truck, and walked over to where the sweep auger was operating to determine that everything was operating properly.

Brad Brunner entered an adjoining grain bin, losing visual contact with the truck and his son. Upon exiting the bin, Mr. Brunner found Jeremiah standing near the portable grain auger. He had suffered a traumatic amputation of the right hand.

At the time of his injury, Jeremiah Brunner was approximately 70 percent permanently hearing impaired, and today he wears hearing aids. Jeremiah continues to live with his mother and father and two siblings on the farm near Vale.

## DISCUSSION

In the motion for summary judgment, third-party defendants ask the Court to dismiss the third-party complaint based upon the doctrine of parental immunity, despite the absence of any legal authority establishing, or for that matter disparaging, the operation of such immunity in this jurisdiction. In the alternative, third-party defendants request this Court to certify the question to the Supreme Court of South Dakota pursuant to SDCL 15–24A.

The United States Supreme Court has instructed district courts hearing diversity cases that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).[1] The *Erie* Court noted that in a diversity context, the "law of the state" includes not only state statutes, but also the corpus of interpretive law as pronounced by the state courts. *Erie,* 304 U.S. at 78, 58 S.Ct. at 817.

█ The question presented by the defendant's motion of whether a parent is immune from suit, either directly or upon a third-party claim of contribution, for certain acts arising out of the prosecution of parental functions is one of first impression for this jurisdiction. The Supreme Court of South Dakota in *Kloppenburg v. Kloppenburg,* 66 S.D. 167, 280 N.W. 206 (1938), had an opportunity to rule on an issue related to the one presented in this case. *Kloppenburg* involved a claim by a mother against her allegedly emancipated minor son for injuries sustained in an automobile collision while a passenger in an automobile

driven by her son. *Kloppenburg* is distinguishable from the case now before the Court in that the South Dakota Supreme Court's determination that the doctrine of intra-family immunity barred the mother's action was based upon an interpretation of Minnesota, not South Dakota, law and therefore does not provide this Court with clear controlling precedent on the question presented.

In the absence of a definitive expression of state law on any matter which comes before a district court, it is the duty of the court to conscientiously apply state law as the court believes it would be applied in the state courts in order that the court may "make its own determination of what the Supreme Court of [the State] would probably rule in a similar case." *King v. Order of United Commercial Travelers,* 333 U.S. 153, 161, 68 S.Ct. 488, 492, 92 L.Ed. 608 (1948); 19 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4507 (1982). Thus, even though the South Dakota Supreme Court's decision in *Kloppenburg* is not an unequivocal statement of state law on the issue raised by the defendant's motion to dismiss, this Court will nonetheless endeavor to follow the guidance provided by other relevant judicial and statutory authority in interpreting South Dakota's approach to the question of parental immunity as this Court conscientiously believes this dispute would be resolved by the South Dakota Supreme Court. *King,* 333 U.S. at 161, 68 S.Ct. at 492.

Of historical note, the doctrine of parental immunity has no roots in the general common law adopted by many states at the time of their political organization, but instead has its origins in the Mississippi case of *Hewellette v. George,* 68 Miss. 703, 9 So. 885 (1891). In refusing to permit a suit by a minor daughter against her mother for false imprisonment, the *Hewellette* court relied exclusively on public policy arguments stating:

---

**1.** The doctrine of federal judicial deference to state substantive law announced in *Erie Railroad* has found expression in 28 U.S.C. § 1652, which revises Section 34 of the Judiciary Act of 1789 and provides that "[t]he laws of the several states, except where the Constitution of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

[t]he peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing ...

*Hewellette*, 9 So. at 887. Forty-two states followed Mississippi's lead and adopted some form of parental immunity. *See* Hollister, *Parent–Child Immunity: A Doctrine in Search of Justification*, 50 Fordham L.Rev. 489, 494 (1981–82).

Among the various rationale that have provided the basis for the parental immunity doctrine are included: (1) the disruption of domestic tranquility and the family as the basic social unit of American society; (2) the threat to parental discipline and control; (3) the proliferation of fraudulent and collusive suits; and, (4) the depletion of family resources. *See Begley v. Kohl & Madden Printing*, 157 Conn. 445, 254 A.2d 907 (1969); *Barlow v. Iblings*, 261 Iowa 713, 156 N.W.2d 105 (1968); *Skinner v. Whitley*, 281 N.C. 476, 189 S.E.2d 230 (1972); *Orefice v. Albert*, 237 So.2d 142 (Fla.1970).

These policy arguments, however, have not proven capable of withstanding judicial or scholarly scrutiny over time and have been found to be insufficient to justify the continued application of the doctrine. With respect to the family harmony justification, some courts have argued that family harmony and parental authority is more seriously disrupted when a victim of another's negligence is permitted to go uncompensated. *Rousey v. Rousey*, 528 A.2d 416, 421 (D.C.App.1987); *Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721, 722 (1976). Other courts point to the illogic of permitting a child to sue one or both parents in contract and property disputes but not in tort. The domestic tranquility argument is further undermined by the modern prevalence of liability insurance which shifts the controversy and burden of providing compensa-tion to a third-party insurer. *Gelbman v. Gelbman*, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969); *Barranco v. Jackson*, 690 S.W.2d 221, 224 (Tenn.1985).

The danger of fraud or collusion is widely regarded as too specious to serve as a basis for a total ban on parent-child tort actions by reason that judges and juries are regarded as capable of detecting fraudulent and collusive claims. *Pedigo v. Rowley*, 101 Idaho 201, 610 P.2d 560, 562 (1980); *Gelbman*, 245 N.E.2d at 194. Finally, with respect to the potential for the depletion of family resources arising out of intra-family lawsuits, it is argued that the presence of insurance eliminates this risk, and to the extent the risk exists, it overlooks the compelling question of compensating the child for its injuries. *Hebel v. Hebel*, 435 P.2d 8 (Alaska 1967); *Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966).

Although the overwhelming majority of states at one time followed the doctrine of parental immunity, judicial support for the doctrine eroded quickly after a 1963 Wisconsin decision which entirely abrogated parental immunity, except in cases where the allegedly tortious conduct involved "an exercise of parental authority ... [or] ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193, 198 (1963). Fourteen years later, the American Law Institute, specifically endorsing the *Goller* approach, published section 895G of the Restatement (Second) of Torts, completely rejecting general parent-child tort immunity:

> (1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.
>
> (2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious.

Restatement (Second) of Torts § 895G comment j (1977).

Numerous states have reexamined the question of parent-child tort immunity in the wake of the *Goller* decision and the

Restatement's abrogation of general immunity. To date, a substantial majority of jurisdictions have abrogated the doctrine either partially or completely. Of the states which have reconsidered parental immunity, few have eliminated the doctrine entirely.[2] Three states have declined to adopt parental immunity or have replaced it with a reasonable parent standard.[3] Most jurisdictions have retained the doctrine, but have limited its application to certain circumstances. The principal variations relating to tort actions include: parental immunity or privilege only where the exercise of parental authority or discretion is somehow involved;[4] parental immunity except where the injury was caused by negligence in a motor vehicle accident;[5] parental immunity except to the extent of liability insurance;[6] some cases deny immunity when the child's injury occurred in the course of the parent's vocational or business activities;[7] most other states continue to adhere to the traditional rule of immunity for simple negligence torts.[8] In no case is the immunity held to apply to intentional, willful, or malicious torts.[9]

Over the years, the *Goller* decision's exemptions for parental conduct involving parental authority and discretion have been criticized as being susceptible to arbitrary distinctions. *See Gibson v. Gibson*, 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648, 653 (1971); *compare Lemmen v. Servais*, 39 Wis.2d 75, 158 N.W.2d 341 (1968) (failure to warn a child to watch for traffic was within parental discretion and immune under *Goller*) *with Cole v. Sears Roebuck &*

**2.** *Petersen v. Honolulu,* 51 Haw. 484, 462 P.2d 1007 (1969); *Rupert v. Stienne,* 90 Nev. 397, 528 P.2d 1013 (1974); *Briere v. Briere,* 107 N.H. 432, 224 A.2d 588 (1966); *Gelbman v. Gelbman,* 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971); *Elam v. Elam,* 275 S.C. 132, 268 S.E.2d 109 (1980).

**3.** *Gibson v. Gibson,* 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971); *Anderson v. Stream,* 295 N.W.2d 595 (Minn.1980); *Miller v. Leljedal,* 71 Pa.Cmwlth. 372, 455 A.2d 256 (1983).

**4.** *Hebel v. Hebel,* 435 P.2d 8 (Alaska 1967); *Sandoval v. Sandoval,* 128 Ariz. 11, 623 P.2d 800 (1981); *Schneider v. Coe,* 405 A.2d 682 (Del. 1979); *Wagner v. Smith,* 340 N.W.2d 255 (Iowa 1983); *Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky. 1970); *Black v. Solmnitz,* 409 A.2d 634 (Me. 1979); *McCallister v. Sun Valley Pools,* 100 Mich.App. 131, 298 N.W.2d 687 (1980); *Foldi v. Jeffries,* 93 N.J. 533, 461 A.2d 1145 (1983); *Felderhoff v. Felderhoff,* 473 S.W.2d 928 (Tex.1971); *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193 (1963).

**5.** *Hebel v. Hebel,* 435 P.2d 8 (Alaska 1967); *Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282 (1970); *Ooms v. Ooms,* 164 Conn. 48, 316 A.2d 783 (1972); *Nocktonick v. Nocktonick,* 227 Kan. 758, 611 P.2d 135 (1980); *Black v. Solmitz,* 409 A.2d 634 (Me.1979); *Transamerica Ins. Co. v. Royle,* 202 Mont. 173, 656 P.2d 820 (1983); *Nuelle v. Wells,* 154 N.W.2d 364 (N.D.1967); *Guess v. Gulf Ins. Co.,* 96 N.M. 27, 627 P.2d 869 (1969); *Carver v. Carver,* 55 N.C.App. 716, 286 S.E.2d 799 (1982); *Unah v. Martin,* 676 P.2d 1366 (Okla.1984); *Silva v. Silva,* 446 A.2d 1013 (R.I.1982); *Smith v. Kauffman,* 212 Va. 181, 183 S.E.2d 190 (1971); *Merrick v. Sutterlin,* 93

Wash.2d 411, 610 P.2d 891 (1980); *Lee v. Comer,* 159 W.Va. 585, 224 S.E.2d 721 (1976).

**6.** *Williams v. Williams,* 369 A.2d 669 (Del.1976); *Ard v. Ard,* 414 So.2d 1066 (Fla.1982); *Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975); *Farmers Ins. Group v. Reed,* 109 Idaho 849, 712 P.2d 550 (1985); *Unah v. Martin,* 676 P.2d 1366 (Okla.1984).

**7.** *Felderhoff v. Felderhoff,* 473 S.W.2d 928 (Tex. 1971); *Trevarton v. Trevarton,* 151 Colo. 418, 378 P.2d 640 (1963).

**8.** *Owens v. Auto Mut. Indem. Co.,* 235 Ala. 9, 177 So. 133 (1937); *Thomas v. Inmon,* 268 Ark. 221, 594 S.W.2d 853 (1980); *Horton v. Reaves,* 186 Colo. 149, 526 P.2d 304 (1974); *Coleman v. Coleman,* 157 Ga.App. 533, 278 S.E.2d 114 (1981); *Pedigo v. Rowley,* 101 Idaho 201, 610 P.2d 560 (1980); *Thomas v. Chicago Bd. of Educ.,* 77 Ill.2d 165, 32 Ill.Dec. 308, 395 N.E.2d 538 (1979); *Vaughan v. Vaughan,* 161 Ind.App. 497, 316 N.E.2d 455 (1974); *Bondurant v. Bondurant,* 386 So.2d 705 (La.App.1980); *Shell Oil Co. v. Ryckman,* 43 Md.App. 1, 403 A.2d 379 (1979); *Montz v. Mendaloff,* 40 Md.App. 220, 388 A.2d 568 (1978); *McNeal v. Estate of McNeal,* 254 So.2d 521 (Miss.1971); *Fugate v. Fugate,* 582 S.W.2d 663 (Mo.1979); *Pullen v. Novak,* 169 Neb. 211, 99 N.W.2d 16 (1959); *Teramano v. Teramano,* 6 Ohio St.2d 117, 216 N.E.2d 375 (1966); *Winn v. Gilroy,* 61 Or.App. 243, 656 P.2d 386 (1983); *Campbell v. Gruttemeyer,* 222 Tenn. 133, 432 S.W.2d 894 (1968); *Oldman v. Bartshe,* 480 P.2d 99 (Wyo.1971).

**9.** *Emery v. Emery,* 45 Cal.2d 421, 289 P.2d 218 (1955); *Nudd v. Marsoukas,* 7 Ill.2d 608, 131 N.E.2d 525 (1956); *Elkington v. Foust,* 618 P.2d 37 (Utah 1980); *Wood v. Wood,* 135 Vt. 119, 370 A.2d 191 (1977).

*Co.,* 47 Wis.2d 629, 177 N.W.2d 866 (1970) (allowing a two-year old child to play on a swing set was not within the *Goller* immunity). The California Supreme Court has rejected the *Goller* approach on the ground that it would theoretically provide a parent a carte blanche right to act negligently toward a child in certain circumstances. California adopted an approach which imposes upon a parent the duty to act as a reasonable parent in all cases. *Gibson v. Gibson,* 479 P.2d at 653. The reasonable parent standard, however, also has found criticism for its attempt to apply a uniform standard of acceptable parental conduct across the economic, educational, cultural, religious, and ethnic spectrum. *See Holodook v. Spencer,* 36 N.Y.2d 35, 364 N.Y.S.2d 859, 324 N.E.2d 338 (1974). The *Holodook* court stated that to apply the reasonable parent standard "would be to circumscribe the wide range of discretion a parent ought to have in permitting his child to undertake responsibility and gain independence." *Holodook,* 324 N.E.2d at 346.

In spite of judicial criticism of the *Goller* opinion, and the adoption of alternative standards in select jurisdictions, the *Goller* formula retains vitality, even in jurisdictions that have abrogated parental immunity. *See Holodook,* 324 N.E.2d at 346 (no action at law for claim of negligent supervision, criticizing *Gibson* reasonable parent standard); *Pedigo v. Rowley,* 101 Idaho 201, 610 P.2d 560 (1980) (parental authority and discretion exceptions adopted, specifically rejecting *Gibson* standard). Notwithstanding the total abrogation of parental immunity in paragraph (1) of section 895G of the restatement, paragraph (2), when read in connection with comments (j) and (k) of section 895G, has served as a legal basis independent of the parental immunity doctrine for adopting the *Goller* formula. Paragraph (2) of section 895G declares that certain parental acts are privileged by reason of the parent-child relationship. For example, the Restatement (Second) recognizes as privileged certain disciplinary acts which would be tortious if directed at a third party, *e.g.,* a parent who spanks a child would be privileged from being sued by the child for battery. Comment (j) cites *Goller* with approval, and designates as the "better law" the trend entirely abrogating parent child immunity, while comment (k) specifically singles out the exercise of parental authority and discretion as among the essential elements of parenthood to be preserved. Accordingly some jurisdictions have adopted the *Goller* formula, not as an exception to the general abrogation of parental immunity as originally promulgated by the *Goller* court, but as a distinct parental privilege under paragraph (2) of section 895G. *Winn v. Gilroy,* 296 Or. 718, 681 P.2d 776 (1984) (parental authority and discretion privileges adopted pursuant to Restatement).

South Dakota has never explicitly adopted or rejected the parental immunity doctrine and, absent authority endorsing the concept, this Court does not believe the Supreme Court of South Dakota would adopt the doctrine. Most persuasive is the fact that the vast majority of states have been abrogating or curtailing the application of the doctrine. Further, this Court holds that the rule expressed in *Goller* and the Restatement (Second) embodies the more persuasive reasoning.

A general exploration of statutory and judicial law relating to duties which arise out of the family relationship, and which, if breached, may form the basis of legal action, indicates that the legislature and the courts of this state interfere only to a very limited degree in family relations with the result that few legal duties exist by reason of the parent-child relation which, if breached, would entail legal consequences for the parent. Parents are obligated in accordance with their respective means to provide the necessary maintenance, education and support of their child, including the provision of food, clothing, shelter, and medical attention. SDCL 25-7-6.1. A parent's neglect of these duties gives rise to both remedial actions, such as forfeiture of custody, and criminal penalties. SDCL 25-7-16. A parent is responsible for providing a child with physical care, communication, and guidance, and is susceptible to legal sanction for failing to observe minimum standards of care, for example, by the in-

fliction of excessive physical punishment, or by permitting a child under age 16 to be employed in an occupation involving a risk of danger to life, health, or morals. SDCL 25–5–16; SDCL 22–18–5; SDCL 60–12–3. Although, a parent has no duty to prevent a child from engaging in employment potentially dangerous to life and health when the child is employed in the service of a parent. SDCL 60–12–3.[10]

■ As a general rule, parents may not be held liable to third persons for the negligence of their child. SDCL 25–5–14; *Miller v. Stevens*, 63 S.D. 10, 256 N.W. 152, 154 (1934) (parent-child relationship alone does not render father liable for torts of minor son); Opinion of the South Dakota Attorney General No. 78–17. Actions by third parties against the parents for the tortious conduct of a child are permitted only in limited circumstances. The Restatement (Second) of Torts provides that:

A parent is under a duty to exercise reasonable care so as to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child; and

(b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 316. South Dakota follows these principles. *See* SDCL 25–5–15 (parents liable for malicious and willful tortious conduct of child); Opinion of the Attorney General 78–17 (parents not liable for damages caused by negligent minor child); *Lamro Indep. Consol. School Dist. v. Cawthorne*, 76 S.D. 106, 73 N.W.2d 337, 338 (1955) (general rule against parental liability for tortious conduct of minor child to be construed broadly). Parents may hold a duty to third par-

ties to properly supervise a child if the parent entrusts the child with a dangerous instrumentality and the parent has knowledge that the child is reckless respecting use of the instrumentality. *Johnson v. Glidden*, 11 S.D. 237, 76 N.W. 933 (1898) (parent has duty to interpose parental authority to prevent tortious conduct on the part of the child when parent is aware of child's tendencies towards recklessness or endangerment).

■ In the past, the law has interposed itself into the realm of domestic relations only for the limited purpose of establishing a parental duty of support and guidance to a child personally. With respect to third parties, absent circumstances indicating an intentional tort on the part of the child or entrustment with a dangerous instrumentality on the part of the parent, South Dakota law does not recognize a third-party's claim against a parent based upon the parent's negligent supervision of the child. Accordingly, it would not seem logical that South Dakota would recognize a claim by a child against the parent for negligent supervision. While the foregoing authority admittedly concerns the duty of a parent to prevent injury to a third person by exercising proper supervision over a child, as distinguished from the instant case which involves the duty owed by a parent to a child, the rationale in either case rests upon the parent's exercise of supervision. If there is good rationale for the rule that a parent owes no duty to third parties for negligent supervision of the child, it seems a logical corollary that there is no duty owed by the parent to the child. *Miller,* 256 N.W. at 154; *Johnson,* 76 N.W. at 933.

In addition to strong legal authority indicating a general policy disfavoring state involvement in the family relationship, persuasive policy arguments also exist in favor of the adoption of a general parental

---

**10.** The Court notes that parents may be liable in tort to their children in circumstances where the injury occurs while the parent is acting toward the child in some other capacity than as a parent. *Felderhoff v. Felderhoff,* 473 S.W.2d 928, 933 (Tex.1971) (boy employed as farmhand on father's farm could sue farming partnership because injury occurred in context of employer-employee relationship and not parent-child relationship); *Signs v. Signs,* 156 Ohio St. 566, 103 N.E.2d 743, 745 (1952) (a parent acting in his business or vocational capacity is not immune from a personal tort action by his unemancipated minor child).

privilege in the realm of parental authority and discretion. This Court is concerned with preventing official interference in matters involving parent-child relationships, protection of family integrity and harmony, and the protection of parental discretion in the discipline and care of a child. With respect to the parental exercise of supervision, the Court is mindful of the *Holodook* court's admonition that there are conceivably:

> few, if any, accidental injuries to children which could not have been prevented or substantially mitigated, by keener parental guidance, broader foresight, closer protection, and better example. Indeed, a child could probably avoid most physical harm were he under his parent's constant surveillance and instruction, though detriment more subtle and perhaps more harmful than physical injury might result. If the instant negligent supervision claims were allowed, it would be the rare parent who could not conceivably be called to account in the courts for his conduct toward his child, either by the child directly or by virtue of [a claim for contribution].

*Holodook*, 324 N.E.2d at 343. Raising a child is a unique and delicate function which involves reciprocal responsibilities between parent and child which do not exist between a child and a stranger. Principles of freedom and democracy are closely interwoven with preserving the integrity of family decision making.[11] Objective standards of proper child rearing, such as California's reasonable parent standard, are inimical to these values and likely impossible to formulate. *See Anderson v. Stream*, 295 N.W.2d 595, 602 (Minn.1980), Justice Rogosheske in dissent; *Holodook*, 324 N.E.2d at 346. Moreover, objective standards encourage judicial second-guessing of a parent's own highly personal determination of the best methods of raising a child or infringe on a parent's individual conclusion regarding the level of trust to place in a child in a given situation.

The prevalence of insurance is often cited as a justification for subjecting parents to liability to suit by their children as insurance shifts the adversarial nature of the proceedings from the parent to the insurer, and places upon the insurer the burden of compensation. This argument is flawed in the basic assumption that parents will always be properly and adequately insured against the category of claim made by the child or the child's ward. Unlike automobile insurance, other forms of insurance are not compulsory by statute. Parents who rent a home or apartment may not have a comprehensive homeowner's policy which would include tort liability coverage. A child whose parents are adequately covered by insurance might be expected to prosecute their claims eagerly, but vulnerability to a countersuit for contribution will certainly make uninsured parents reluctant to assert claims against negligent third parties. Thus, the net effect of permitting a child's cause of action against the parent, and by implication a third party plaintiff's claim for contribution, could deter a child from suing an insured tortfeasor. Conversely, where a child of an uninsured parent does sue a third party and the parent is ultimately held liable for contribution, family discord and strife must inevitably result. The whole purpose of insurance becomes distorted when the presence of insurance encourages new kinds of liability. The effect of judicial activity in this connection will quite simply occur at a cost to society in the form of increased premiums and the necessity of purchasing insurance coverage to guard against new forms of liability. *Rousey v. Rousey*, 528 A.2d 416, 423 (D.C.App.1987), Judge Nebeker in dissent.

The Court is not persuaded that the conduct of third-party defendant Brad Brunner on the day of the injury transgressed the boundaries of the privilege accorded acts of parental authority and discretion. Defendant nowhere alleges that Brad Brunner acted willfully or maliciously toward Jeremiah, but instead attempts to distinguish Brunner's supervision of Jeremiah as being

11. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

different from mere negligence on the grounds that the father "physically brought" his son into a dangerous area. Whether an act is one involving a discharge of parental authority and discretion does not rest upon the presence or absence of an affirmative act on the part of the parent. If such were the case, then any parent who takes a child to a playground and lets the child play upon such potentially hazardous equipment as a tall slide or a teeter-totter would be open to suit either directly or upon contribution. For that matter, every time a parent plugged in an iron, operated a toaster, or boiled a pot of water on the stove the parent would be subject to potential liability were a child injured by contact with these daily household hazards. It simply becomes all too easy to circumvent the parental privilege by characterizing the parent's conduct as an affirmative step toward placing the child in danger. The fact that Jeremiah Brunner was in his father's company for purposes of supervision sufficiently implicates functions of parental authority and discretion as to fall within that privilege. *Zikely v. Zikely,* 98 A.D.2d 815, 470 N.Y.S.2d 33, 35 (1983).

Having determined that third-party defendant Brad Brunner is not civilly liable for his role in this matter, it follows that neither he, nor his partnership, may be liable upon a claim of contribution. Under the South Dakota Contribution Among Joint Tortfeasors Act, SDCL 15–8–1, *et seq.* (1984), the right of contribution arises where "two or more persons [are] jointly or severally *liable* in tort for the same injury ..." SDCL at 15–8–11 (emphasis added). Accordingly, it is essential to a claim of contribution that the third-party defendant be held liable to the plaintiff for the same injury. *Burmeister v. Youngstrom,* 81 S.D. 578, 139 N.W.2d 226 (1965). In the context of this case, Lear–Siegler's claim for contribution from Brad Brunner and H.L. Brunner & Sons may not proceed by reason that neither third-party defendant may be held concurrently or directly liable, as a matter of law, to Jeremiah Brunner for the injuries sustained as a result of Jeremiah's contact with the Lear–Siegler auger.[12] *Olesen v. Snyder,* 249 N.W.2d 266, 270 (S.D.1976).

■ Today the Court declines to depart from South Dakota's general policy of non-interference in the parent-child relation. The Court's interpretation of this policy leads to a conclusion that its logical extension to the case at hand results in the adoption of the approach advocated by the Restatement (Second) of Torts which recognizes as privileged from the negative compulsions of civil liability the exercise of parental decision making in the realm of parental authority and discretion.[13] The Court does not believe this privilege will cause parents to act tortiously toward their children as the privilege does not encompass willful or malicious conduct of the sort generally prohibited under the criminal code, or acts of negligence not involving parental authority and discretion.

■ By parental authority, the Court contemplates an exercise or act involving discipline, supervision, or guidance of a child. An exercise of discretion would tend to concern a parent's decisions concerning food and clothing, the home environment, medical care, and other necessities. *Jilani v. Jilani,* 767 S.W.2d 671 (Tex.1988). The

---

12. The South Dakota provision of the Uniform Partnership Act concerning liability of a partnership for the wrongful act of a partner, by its terms, holds a general partnership liable only to the same extent as the partner who has incurred liability. As Brad Brunner is not liable to the plaintiff for his acts or omissions, the partnership of which he is a member is similarly not liable. SDCL 48–2–7; *Karalis v. Karalis,* 213 Minn. 31, 4 N.W.2d 632 (1942). As noted above a parent, and hence a partnership in which the parent is a member, may be liable to a child/plaintiff where the act or omission complained of arises not out of the discharge of a

parental function, but out of a change in the parent-child relationship to one of employer-employee, or other relationship.

13. The Court notes that in the past, when faced with a question of law for which there is no definitive rule, the South Dakota Supreme Court has not hesitated to adopt the relevant rule expressed in the Restatement of Torts (Second). *Engberg v. Ford Motor Co.,* 87 S.D. 196, 205 N.W.2d 104, 109 (1973) (adopting Restatement (Second) of Torts § 402A as the law of strict liability for the state of South Dakota).

scope of these privileges is likely to be as broad as the circumstances in which they may arise. For example, a parent's negligent operation of an automobile is generally not deemed sufficiently related to an exercise of parental authority or discretion as to fall within the privilege. *Gilroy*, 681 P.2d at 778. On the other hand, the question of whether or not to install a pool in the family backyard, obviously an indulgence and not a necessity, has been deemed sufficiently related to parental discretion respecting the sort of home to provide as to bar a minor child's claim based on injuries sustained diving into the pool. *McCallister v. Sun Valley Pools, Inc.*, 100 Mich.App. 131, 298 N.W.2d 687, 691 (1980); *Haddrill v. Damon*, 149 Mich.App. 702, 386 N.W.2d 643 (1986) (a parent may determine in the exercise of reasonable parental authority that a child may or may not ride a dirt bike). It is apparent that a parent's responsibility for physical conditions in the home, for food, medical care, toys and recreation, and general supervision falls within a range of distinct issues that need not be incorporated into a general verbal formula until the need arises to address them. Nonetheless, the construction given the privilege must be sufficiently broad as to respect the importance of maintaining parental freedom in the exercise of authority and discretion, and as to give effect to the underlying policy consideration of preventing the substitution of judicial discretion for parental judgment. Accordingly, it is:

ORDERED that the third-party defendant's motion for summary judgment is GRANTED.